JOHN M. GORDON, SAMUEL GORDON, SUSAN GORDON GRADY, and others *vs.* MARY GRANT SMALL, by her Husband and ·next friend, GEORGE SMALL.

*Construction of a Bond and Declaration of Trust and Enforcement in Equity against the Estate of the deceased Obligor—Parties to a proceeding in Equity against an Executor for an Account of his Testatrix's Personal Estate—Limitations.*

In 1853, S. F. R., widow, executed a bond whereby she promised and obligated herself to pay, "twelve months after demand, to the order of J. M. G., trustee, for the sole and separate use of M. G. S., lately M. G. J., his executors, administrators or assigns, the sum of six thousand dollars, with interest from date, at the rate of six per cent. per annum, payable half-yearly; to which payment well and truly to be made, &c." At the same time she executed on the same paper a declaration of trust to J. M. G., in consideration of her love and affection for the said M., and for other reasons, and of the sum of five dollars, whereby she granted, bargained and. sold, conveyed, assigned and delivered unto the said J. M. G., his heirs, &c., successors and assigns, her bond aforesaid, in trust to hold the same, or, if and when paid, the principal sum thereof to be by him, or his successor in the trust, invested in either real or leasehold estate, stocks or funds, or loaned out on mortgage, as he, or his successor in the trust, in his discretion should think most beneficial for the parties interested; and all the interest, rents, issues or net income of this trust fund to pay over to the said M. during her life, to her sole and separate use; and from and after her death to "convey the said bond, if not then paid, or if paid, the principal sum thereof, or to convey and divide the estate in which it may then be invested, to and among her children, and their issue then living, share and share alike," &c., and in default of such children or their issue living at her death, "to convey the said bond, if not then paid, or if paid, the principal sum thereof or the estate in which it may then be invested, to my own right heirs forever, when this trust shall terminate." In case the said M. should die before S. F. R. without leaving child or children, then in trust to re-convey the said bond, if not then paid, or if paid, to convey

Gordon, *et al. vs.* Small.

and assign the principal sum, or the estate in which it might then be invested, to S. F. R., herself, to her own use forever. It was further provided, that in case the said J. M. G. should desire to retire from the trust, he was authorized and empowered to appoint, by deed, a successor in the trust, and to assign the bond or trust fund to such person as he should so appoint. The bond and declaration of trust were delivered to J. M. G., trustee, and accepted by him. S. F. R. paid the interest on the bond to M. to the time of her death. The principal sum remained unpaid when S. F. R. died in 1878, testate, having devised and bequeathed her entire estate and made S. G. G., a niece, general residuary devisee and legatee. S. F. R. died without issue, leaving surviving her, brothers and sisters and children of a deceased brother as her heirs-at-law, and only next of kin. M. was married, without issue. On a bill filed by M. against J. M. G., trustee, and R. M., executor of S. F. R. and the heirs-at-law, and next of kin of the deceased, and S. G. G. and her husband, to compel the collection of the bond from S. F. R's estate, to require the trustee to give bond, and that the trust fund might be administered under the Court's direction, it was HELD:

That S. F. R's executor should pay the amount of the bond (which was a perfect obligation and would come in after debts of the estate and before legacies,) to the trustee appointed by J. M. G., (who had declined to act further as trustee,) and in default of such trustee accepting the trust and giving bond, to a trustee appointed by the Court, to be held in trust for the use and benefit of M. during her life, and at her death for her children or their issue, if any then living, but if no such child or issue then living, the trustee should transfer the trust fund or the securities held therefor to the right heirs of S. F. R.

As the executor is the trustee and proper representative of all persons interested in the personal estate, and has the duty cast upon him by law of protecting it against improper demands, it is not necessary or proper to join either a pecuniary or a residuary legatee, or the next of kin, as parties to a bill against the executor for an account of the personal estate, however much interested such persons may be in defeating the claim upon which the suit is founded.

The Statute of Limitations has no application in a Court of Equity, to an express and continuing trust.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., GRASON,. MILLER, ALVEY and IRVING, J.

*Graham Gordon, John Scott* and *Bradley T. Johnson,* for the appellants.

*J. Alexander Preston,* for the appellee.

ALVEY, J., delivered the opinion of the Court.

Mrs. Susan F. Ryan, a widow lady residing in the City of Baltimore, on the 11th of May, 1853, executed a bond under her hand and seal, whereby she promised and obligated herself to pay, twelve months after demand, "to the order of John M. Gordon, Esq., trustee, for the sole and separate use of Mary Grant Small, lately Mary Grant Jackson, his executors, administrators, or assigns, the sum of six thousand dollars with interest from date, at the rate of six per cent. per annum, payable half yearly; to which payment well and truly to be made," &c. At the same time, and written on the same sheet of paper, she executed, under hand and seal, a deed or declaration of trust, with certain limitations as to the uses and disposition of the fund created by the bond. This deed of trust was made to the obligee in the bond, and recites the bond, and the fact that it had been duly executed and delivered by the obligor. The deed professes to have been made in consideration of love and affection for Mary Grant Small, and for other reasons, and also the sum of five dollars. By this deed, according to its terms, its author granted, bargained and sold, conveyed, assigned and delivered, unto the trustee named, his heirs, &c., successors and assigns, the bond thereinbefore described, in trust, to hold the same, or, if and when paid, the principal sum thereof to be by him, or his successor in the trust, invested in either

real or leasehold estate, stocks or funds, or to be loaned out on mortgage, as he, or his successor in the trust, in his discretion, should think most beneficial for the parties interested. It then provides, that all the interest, rents, issues or net income of this trust fund, shall be paid over to Mrs. Small during her life, to her sole and separate use; and from and after the death of Mrs. Small, the trustee is required to " convey the said bond, if not then paid, or if paid, the principal sum thereof, or to convey and divide the estate in which it may then be invested, to and among her children, and their issue then living, share and share alike," &c.; and in default of such children of Mrs. Small, or their issue living at her death, the trustee is then directed " to convey the said bond, if not then paid, or if paid, the principal sum thereof, or the estate in which it may then be invested, *to my own right heirs forever,* when this trust shall terminate." And it is further provided that if Mrs. Small should die before the declarant of the trust, without child or children, the trustee should reconvey the bond, if not then paid, or if paid, should convey and assign the principal sum, or the estate in which it might then be invested, to the declarant herself, to her own use forever.

It is admitted that both the bond and the declaration of trust were delivered to John M. Gordon, the trustee, at the time of their date, and that he accepted, and has held the same, until they were produced in Court by him in this cause, as exhibits with his answer. It is also admitted that Mrs. Ryan regularly paid the interest on the bond down to the time of her death, directly to Mrs. Small; and that there was no demand made of Mrs. Ryan during her life for the payment of the principal sum; and that the principal sum remains unpaid, though demand thereof has been made of Robert Mickle, the executor of Mrs. Ryan.

Mrs. Ryan died in January, 1878, leaving a last will and testament, which has been duly admitted to probate,

whereby she devised and bequeathed her entire estate; and among the legacies were several pecuniary, and some specific; and Mrs. Susan Gordon Grady, a niece of the testatrix, was made the general residuary devisee and legatee of the estate. The testatrix was childless, and left surviving her several brothers and sisters, and the children of a deceased brother, as her heirs-at-law and only next of kin. Mrs. Small is now over forty-seven years of age, and has never had a child.

A few months after the death of Mrs. Ryan the original bill in this cause was filed by Mrs. Small, against John M. Gordon, the trustee under the deed, and Robert Mickle, the executor of the deceased. The objects of the bill were to compel the collection of the bond for $6000 from the estate of Mrs. Ryan; to require the trustee to give bond; and that the trust fund might be administered under the direction and supervision of the Court. The bill was afterwards amended, whereby the heirs-at-law and next of kin of the deceased were made parties, and also Mrs. Grady, the residuary legatee, and her husband; all of whom answered.

There is really no dispute in regard to the facts; the questions in the case are all purely questions of law.

The executor makes no controversy as to the existence and legality of the claim; but, in his answer, he says, that whenever the Court shall decide to whom payment of the bond shall be made, it will be necessary that the person or persons, so entitled, shall produce the claim, duly authenticated, to him as executor, to be paid or satisfied in due course of administration of the estate. Mrs. Susan Gordon Grady, claiming as residuary legatee, by the answer of herself and husband, insists that the bond was a mere voluntary promise, without consideration, and therefore cannot be enforced against the estate of the obligor; but if that be not so, still, the bond is barred by the Statute of Limitations, and therefore cannot be enforced. Some of

the brothers and sisters of the deceased insist that, by legal construction of the limitation in the declaration of trust, to the right heirs of the declarant, they are entitled; while some of the other defendants submit their rights to the Court, and others again set up no claim, in their answers, to any part of the fund.

The Court below decreed in favor of the complainant, that the executor of Mrs. Ryan should pay the amount of the bond to the trustee named in the decree, to be held in trust for the use and benefit of Mrs. Small, during her life, and at her death for her children, or their issue, if any then living; but if no such child or issue be then living, the trustee is directed to transfer the trust fund, or the securities held therefor, to Mrs. Susan Gordon Grady, as residuary legatee under the will of Mrs. Ryan, absolutely. It is from this decree that the present appeal is taken. The executor does not appeal; but the appeal is taken by Mrs. Susan Gordon Grady, as residuary legatee, and five of the brothers and one of the sisters of the deceased, claiming under the declaration of trust.

On behalf of Mrs. Grady the decree is sought to be reversed on two grounds: First, that the bond was a mere promise of a gift, without consideration, and that the gift has not been so far consummated as to raise a trust that will be enforced by the Court; and, secondly, that if the bond be valid in its origin, it is now barred by the Statute of Limitations, and therefore not enforceable. But if these positions be found to be untenable, Mrs. Grady is then interested in maintaining the decree against the other appellants as well as against all other parties to it.

On the part of the other appellants, while seeking to maintain the decree so far as it directs the payment of the bond, and thus opposing the positions taken on the part of Mrs. Grady, they seek to reverse the decree, so far as it determines that Mrs. Grady is entitled to the fund, as residuary legatee, on the death of Mrs. Small, without

child or issue of a child then living, on the ground that they are entitled to the fund under the limitation over to the right heirs of the deceased, contained in the deed of trust.

Before proceeding to consider the questions thus presented, there is a preliminary question proper to be adverted to, raised on behalf of Mrs. Wallace, one of the appellants, and that is, that all the legatees under the will of Mrs. Ryan are not made parties to the proceeding. This objection, we think, is wholly untenable. The general rule is well established that, as the executor is the trustee and proper representative of all persons interested in the personal estate, and has the duty cast upon him by law of protecting it against all improper demands, it is not necessary or proper to join either a pecuniary or a residuary legatee, or the next of kin, as parties to a bill against the executor for an account of the personal estate, however much interested such parties may be in defeating the claim upon which the suit is founded. 2 *Wms. on Ex'rs,* 1729 ; *Brown vs. Dowthwaite,* 1 *Madd.,* 446 ; *Lucas vs. McBlair,* 12 *Gill & J.,* 14. There are exceptions, it is true, to this general rule, but the exceptions are always founded upon very special circumstances, such as do not exist in this case, so far as the pecuniary legatees are concerned ; and as to the necessity of making the residuary legatee a party we are not called upon to decide.

This preliminary question disposed of, we now proceed to the main questions raised upon this appeal. And first, as to the question whether there has been a perfected or an irrevocable trust declared, such as a Court of equity will take cognizance of and enforce, as against the estate of the declarant, and those claiming as volunteers under her, such as legatees and next of kin. Supposing Mrs. Grady, the residuary legatee, to be a proper defendant, this question is raised on her appeal ; the executor making no question as to the validity of the claim.

It is conceded that the bond and declaration of trust founded thereon were actually executed and delivered by Mrs. Ryan; and, according to all the authorities, the obligation on the bond was perfect at law. The declaration of trust was also definite and perfect, requiring no other act on her part to complete the instrument declaring the trust, or to render certain either the objects of her bounty, or the nature and extent of the subject-matter of the trust declared. The trustee, holding the bond, having a right to demand and recover the fund at law, the formal and complete declaration of trust in regard thereto is considered in equity as equivalent to a legal transfer of the right to the estate to the *cestuis que trust,* and thus their rights are complete. And whether there was a valuable, or, indeed, any consideration for the bond, is not material, there being no pretence that it was obtained by fraud or any unfair means. The bond is, therefore, binding at law, and will not be relieved against in equity. Treating it, however, as a voluntary obligation, it would not be paid in course of administration, so as to prejudice debts incurred for a valuable consideration, but it will take precedence of legacies. This is not the case of a mere volunteer applying on an imperfect instrument to be considered *cestui que trust;* but the transaction was complete of itself, and the relation of trustee and *cestui que trust* was definitely and completely established; and where that is the case, a Court of equity will, though it be upon the application of a mere volunteer, enforce the execution of the trust against the person creating it, and all subsequent volunteers claiming under that person; but it is well established that the Court will not create a trust, or establish the relation of trustee and *cestui que trust,* by enforcing the performance of an agreement, or by giving effect to an imperfect conveyance or assignment in favor of volunteers.

This is the rule laid down by Lord ELDON in the leading case of *Ellison vs. Ellison,* 6 *Ves.,* 656; *S. C.,* 1 *Lead. Cas.*

*Eq.*, 199, and in note to that case, at page 205.   Indeed, the same rule had been laid down, with equal distinctness, in former cases and by the highest authority.

In the case of *Lechmere vs. Earl of Carlisle*, 3 *P. Wms.*, 211, the Master of the Rolls, Sir Joseph JEKYLL, in answer to an objection taken to the enforcement of the trust in that case, on page 222, said :   "Neither is the objection that the plaintiff is a volunteer of any weight; for this is the case of a trust, and every *cestui que trust*, whether a volunteer or not, or be the limitation under which he claims with, or without, consideration, is entitled to the aid of a Court of equity, in order to avail himself of the benefit of the trust.   There can be no reason that the trustee should retain to his own use the trust money or estate, with respect to which he is barely an instrument, in breach of the confidence reposed in him.   Any voluntary bond is good against an executor or administrator, unless some creditor be thereby deprived of his debt.   Indeed, if the bond be merely voluntary, a real debt, though by simple contract only, shall have the preference ; but if there be no debt at all, then a bond, however voluntary, must be paid by the executor."   The same principle is laid down, upon full consideration by Lord HARDWICKE, in the case of *Williamson vs. Codrington*, 1 *Ves., Sen.*, 511.

Indeed, the conclusion to be drawn from all the cases upon the subject is, that if the author of the trust has perfected his gift in the way which he intended, so that there is nothing left for him to do, and nothing which he has authority to revoke or countermand, the trust is enforceable, irrespective of the want of consideration.   Therefore, where the legal ownership of a right by bond or covenant, enforceable at law, has been completely vested in a trustee for the benefit of a *cestui que trust*, a Court of equity will enforce payment of the bond or covenant, and execute the trust, notwithstanding the legal obligation may have been purely voluntary.   And as authorities directly

Gordon, *et al. vs.* Small.

in support of this proposition, we may refer to the cases of *Williamson vs. Codrington,* 1 *Ves., Sen.,* 514; *Clough vs. Lambert,* 10 *Sim.,* 174; *Collinson vs. Pattrick, Keen,* 123, and *Fletcher vs. Fletcher,* 4 *Hare,* 67. The authorities, existing down to that time, were reviewed by Chancellor KENT, in the case of *Bunn vs. Winthrop,* 1 *John. Ch.,* 329, where it was held that a voluntary bond, or deed of chattel interest, will be supported in equity without consideration, and that the *cestui que trust,* though a mere volunteer, was entitled to the aid of the Court to enforce the trust. The cases in this Court upon this subject are *Cox vs. Sprigg,* 6 *Md.,* 274; *Smith & Darby vs. Barber,* 39 *Md.,* 268, and *Taylor vs. Henry & Bruscup,* 48 *Md.,* 550; and while the facts of those cases are quite different from those of the present, the principles there enunciated are strictly in harmony with what we decide in this case.

The next question is as to the bar of the Statute of Limitations, pleaded by Mrs. Grady.

In answer to this defence, it would be enough to say that the executor alone had the right to plead the Statute, (Code, Art. 93, sec. 99,) and as he has not thought proper to avail himself of the defence, no other person can do so for him. But without placing our opinion exclusively upon that objection to the plea, we think it clear that it can have no application to this case. The bond and the deed of trust must be construed together; and they plainly show upon their face the existence of an express and continuing trust, to which, in a Court of equity, the Statute of Limitations has no application. This is a well established principle, and for which no authorities need be cited.

Upon the whole, therefore, the executor of Mrs. Ryan making no question as to the legality of the bond, we think the Court below quite right in decreeing the payment of the bond, and the execution of the trust.

We come next to the question raised between Mrs. Grady, the residuary legatee, and those parties who claim

to be entitled as embraced within the description of *right heirs* of the deceased, under the deed of trust.

As we have already seen, the decree of the Court below directs the trust fund to be transferred directly to the residuary legatee, upon the death of Mrs. Small without children. In support of this provision of the decree, it is contended on the part of Mrs. Grady, that the limitation over, in default of children of Mrs. Small, to the right heirs of the creator of the trust, is nothing more than an express declaration of intention that the fund should revert to her own estate. And this construction is sought to be maintained by analogy to the principle established in the law of real estate; as where a limitation to the right heirs of the grantor will continue in himself the reversion in fee. As, for example, where a fine was levied to the use of the wife of the conusor for life, remainder to the use of B. in tail, remainder to the use of the right heirs of the conusor; it was adjudged that the limitation of the use to the right heirs of the conusor was void as a remainder, and was merely the continuation of the old use in the conusor as the reversion in fee. *Co. Litt.,* 22 *b; Harg., note* 3, and *Fearne on Rem.,* 51. If, however, this position were conceded to be correct, the decree could not be supported, for if the fund is to come back to the estate by way of reversion, as contended on behalf of the residuary legatee, it should not be directed to be paid over to the residuary legatee, but to the executor to be administered as part of the estate of the testatrix. But we do not think the position taken on behalf of Mrs. Grady can be supported. The testatrix, when she executed the bond and the deed of trust, was not making a grant of real estate; she was dealing with personal property. It is true, she directed the fund, in the event of its coming into the hands of the trustee, to be invested either in real or leasehold estate, stocks or mortgages, at his discretion; and the fund, therefore, at the death of Mrs. Small, may exist either in the form of

real or personal estate. It may, therefore, be treated as having somewhat the character of a mixed fund, at the termination of the trust, composed of real or personal estate, or both, at the discretion of the trustee. In such case, to take either real or personal property, it is clear, the words *"right heirs"* were not intended to have different meanings, according to the nature of the property in which the trust fund may have been invested. If a party limits an interest or estate in trust to his heir, or to the heir of another person, the proper sense and meaning of the word is not necessarily to be departed from because the subject of the donation or trust happens to be personal estate. It is perfectly competent to a party to give to his heir or heirs by that description alone, if it sufficiently designates the party or parties intended to take, any sum of money that the donor may think proper to give, or even the whole of his personal estate. It is simply a question as to what persons or class of persons were intended to be embraced by the description; and the rule of construction is, that the terms employed should be allowed their established legal signification, unless controlled by the context of the instrument. This subject was very fully and carefully considered by the Lord Chancellor, (Lord ST. LEONARDS,) in the case of *De Beauvoir vs De Beauvoir*, 3 *Ho. L. Cas.*, 524, whose opinion was concurred in by the other members of the Court. In speaking of the result of the authorities, at page 557, he says: "As far, therefore, as the authorities go with respect to personal estate, whether the gift be an immediate gift, or whether it be a gift in remainder, the cases appear to me to be uniform—to give to the words the sense which the testator himself has impressed upon them—that if he has given to the heir, though the heir would not by law be the person to take that property, he is the person who takes as *persona designata*. It is impossible to lay down any other rule of construction."

36　　　　　v. 53.

In the case of *Mounsey vs. Blamire,* 4 *Russ.,* 384, where there was a pecuniary legacy given by a testatrix to her *heir* by that designation, it was held that the word was to be understood in its legal and ordinary sense, unless controlled by the context of the will; and the heir-at-law took the legacy to the exclusion of the next of kin, and that case was referred to with approval by the Lord Chancellor, in the case of *De Beauvoir vs. De Beauvoir, supra.* And in the very recent case of *Smith vs. Butcher, L. R.,* 10 *Ch. Div.,* 113, before the Master of the Rolls, Sir GEORGE JESSELL, the bequest was of personal estate to the children of A. during their lives, and on the decease of either of them, his or her share of the principal, to go to his or her lawful heir or heirs; and it was held that the words "lawful heir or heirs" should be read literally, and not as meaning next of kin, executors or administrators, or children.

There are cases, certainly, and a considerable number of them, and of high authority, which hold that where the gift is to the heir or heirs by way of substitution for the original or preceding legatee or donee, as, for instance, where the gift is to "A. or his heirs," the word "heirs" is construed as meaning the persons who would be entitled to take the personal estate of A. in case of intestacy: that is to say, the word "heirs" is held to mean those persons who would be entitled to the personal estate of A., the first donee or legatee, by virtue of the Statute of Distributions, if that person had died intestate, including therefore a widow, but not a husband. As examples of such cases, we may refer to *Vaux vs. Henderson,* 1 *J. & W.,* 388, *and note; Gittings vs. McDermott,* 2 *M. & K.,* 69; *Doody vs. Higgins,* 2 *K. & J.,* 729. But in this case the limitation of the estate is not by way of substitution, within the meaning of the authorities, but the terms *right heirs* are used simply to describe donees in remainder; and therefore the case falls directly within the principle laid down

in the cases of *De Beauvoir vs. De Beauvoir, Mounsey vs. Blamire* and *Smith vs. Butcher*, to which we have already referred.

We are, therefore, of opinion that there is error in the decree appealed from, in decreeing that Mrs. Grady, as residuary legatee, is entitled to receive the trust fund upon the death of Mrs. Small without children or issue living; and we are further of opinion that all those parties embraced within the description of *right heirs* of the deceased, Mrs. Ryan, at the time of her death, according to the ordinary legal signification of those terms, will be entitled in remainder, in the event mentioned.

And having thus determined the rights of the parties in respect of the trust fund, the only remaining question relates to the appointment of a trustee. John M. Gordon, the original trustee, has declined to act further in the execution of the trust. By the deed of trust he was fully authorized and empowered to appoint, by deed, a successor in the trust, and to assign the bond or trust fund to such person as he should so appoint. He states in his answer that he had declined to act further, and that he had appointed C. W. Wallace in his stead as trustee; and he exhibits an instrument under his hand and seal, dated the 28th of March, 1878, whereby he executed the power of appointment, and assigned and transferred the bond to the new trustee so appointed. There is no evidence in the record to show whether this deed of appointment and assignment has ever been delivered to and accepted by the new trustee. If the deed has actually been delivered to and the trust accepted by him, it was not proper to supersede him by the appointment of a new trustee by the Court. The legal title to the bond would be in him. If he has accepted the trust, he should be brought in and required to give bond under the statute. If he has not accepted the trust, or should fail to give the bond required, then a trustee should be appointed by the Court. All

this, however, can be rectified upon remanding the case, and before the entry of another decree in the Court below. In order, therefore, that a new decree may be passed, in accordance with this opinion, we shall reverse the decree appealed from and remand the cause for further proceedings.

> · *Decree reversed, and*
> *cause remanded.*

(Decided 1st May, 1880.)