(Decided 9th April, 1891.)

JOSEPH D. McGUIRE, Adm'r of THOMAS B. DORSEY *vs.* JOHN G. ROGERS.

*Executors and Administrators—Exercise of Discretion by them in the Defence and Prosecution of Claims.*

An administrator sued M. on a claim of his intestate, and recovered judgment in the Court below. At the trial, exceptions were taken by the defendant, but they were not signed and sealed within the time allowed by law. The plaintiff however gave his con-

McGuire, Adm'r *vs.* Rogers.

sent to their being signed and sealed, and the defendant's appeal was brought to the Court of Appeals, which reversed the judgment of the Court below, and refused to order a new trial, on the ground that there was no legally sufficient evidence in the case to entitle the plaintiff to recover.  HELD :

That this consent by the administrator to the signing and sealing of the exceptions, was no ground for charging him personally with the amount of the judgment recovered in the Court below; nor was it any ground for refusing him allowance for the costs incurred in the Court below, and in the Court of Appeals.

Executors and administrators must prosecute suits belonging to their trusts with honesty, intelligence and fidelity, but they are not deprived of the ordinary discretion which belongs to other suitors.   They are not obliged to maintain an unjust claim, nor to prevent a suit from being fairly tried.

APPEAL from the Orphans' Court of Howard County.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., MILLER, ROBINSON, IRVING, BRYAN, FOWLER, McSHERRY, and BRISCOE, J.

*S. Teackle Wallis,* (with whom were *James D. McGuire,* and *Henry E. Wootton* on the brief) for the appellant.

There is nothing whatever in our legislation or in the decisions of our Courts, to countenance the idea that it is the duty of an administrator to violate his own integrity and do injury to others, for the purpose of augmenting the assets of the estate under his charge. He is not appointed for purposes of plunder. He is not bound to do, for the benefit of distributees, what, as a man of conscience and judgment, he would not do for himself. He is not bound to attempt the collection of a doubtful claim, unless indemnified, or to waste assets in speculating in bad debts. Even where he omits the collection of a claim which turns out ultimately to have

been just and recoverable, he is not to be charged, if he has acted in good faith, with the intention of fully and fairly discharging his duty under the direction of a reasonable judgment. *Sanborn vs. Goodhue*, 28 *N. H.*, 48, 58; *Griswold vs. Chandler*, 5 *N. H.*, 492, 494; *Andrews, Adm'x vs. Tucker, et al.*, 7 *Pick.*, 250, 251; *Succession of Pool*, 14 *La. An. Rep.*, 677; *Neff's Appeal*, 57 *Penna. State*, 91, 96; *Bowen, et al. vs. Montgomery, et als., Ex'rs*, 48 *Ala.*, 353, 354; *Ivey, et al. vs. Coleman, Ex'r*, 42 *Ala.*, 410, 416.

In this last case it is held that the burden of proof is on the distributees to show that the claim in question could have been collected. See also, *State, ex rel. Pate vs. Oliver*, 104 *N. Carolina*, 458; *O'Conner vs. Gifford*, 117 *N. Y.*, 275.

The general doctrine is discussed in *Schouler on Executors and Administrators, secs.* 273, 274 and 308.

In the case of *Cooke vs. Cooke*, 29 *Md.*, 538, 542, 551, a prayer had been presented, to the effect that if the jury should find from the evidence that there were debts due to the deceased, which came into the hands of the administrator, they must find all such debts to be assets. The Court held that the prayer was properly rejected, "because it erroneously asserted, as a legal proposition, that all debts which came into the executor's hands were assets, without reference as to whether they were sperate or desperate, or, if the former, whether they had been collected or lost by the default of the executor." See *Schouler on Executors and Administrators, sec.* 273. As an illustration of the discretion which it is the policy of the law to repose in executors and administrators, the fact that they are left to determine, for themselves, whether or not they shall plead the Statute of Limitations is strongly in point. This Court has said, in *Miller vs. Dorsey*, 9 *Md.*, 323, that the propriety and justice of interposing the plea of limitations are confided to the

"'discretion and conscience" of the executor alone, and the Orphans' Court has nothing to do with it. And although in Maryland, this discretion, as in some other States, is statutory, it is the established rule, independently of statute, that it is no *devastavit* for an executor or administrator to pay a just debt, although he might have defeated its recovery by pleading limitations. This doctrine, originating in Courts of equity, gradually extended itself to Courts of common law, and it was left to the personal representative to satisfy "at his own discretion, the conscience of his decedent." *Schouler on Executors and Administrators, sec.* 389; *Wood on Limitation of Actions, sec.* 188.

In a large number of most authoritative decisions, it is laid down that it is not only the right of an executor to refuse to take advantage of limitations as against an honest claim, but his duty to satisfy in that way, in his representative character, the conscience of his testator.

If it were not left to the honest and intelligent discretion of a personal representative to determine whether or not a claim of the estate ought to be prosecuted, the result would be that the assets would more or less be squandered in the vain pursuit of hopeless debts. The executor must therefore act according to his best judgment and conscience. His responsibility is left to be determined by the good faith with which he has acted, and wherever a Court finds that the executor has only done what it would have ordered him to do, if applied to, it will afford him its protection. *Howe vs. Dartmouth,* 7 *Vesey, Jr.,* 137, 150; *Lee vs. Brown,* 4 *Vesey, Jr.,* 369.

In this latter case the Court says, "if an executor does, without application, what the Court would have approved, he shall not be called to account and forced to undo that merely because it was done without application." And see to the same effect, *Andrew vs. Parting-*

*ton,* 3 *Bro. Chancery Cases,* 60; *Foster vs. Dawber,* 6 *Weekly Reporter,* 47.

This Court having determined, in the present case, that the estate of Dorsey was not entitled to maintain its pretended claim against the Messrs. Murphy, would have done the same thing, of course, if the question had been submitted to it, in case the appellant had refused to prosecute. It cannot, therefore, do less than protect him from the consequences of his having allowed the question to be brought before it. After all, the whole controversy comes back to the single question, which cannot possibly have more than a single answer, and that is, whether Mr. McGuire has injured the estate of his decedent by affording the Messrs. Murphy an opportunity of showing that the estate had no valid claim against them. Can the estate be damaged by being prevented from recovering what did not belong to it? Can the administrator have possibly impaired the assets of the estate, or wasted them, when the claim in litigation has been decided by this Court to have been no part of those assets?

In *Clack vs. Holland,* 19 *Beavan,* 271, 272, the Master of the Rolls said that an executor is exonerated, even if he takes no steps at all to collect a claim, provided, it appears that if he had done so, they would have been, or there is reasonable ground for believing that they would have been, ineffectual. What shall be said of a case like the present, where not only have the steps taken proven ineffectual, but the highest tribunal of the State has determined that they deserved to be so? And how can this Court tolerate the refusal of the Orphans' Court to allow the appellant for the costs which its judgment required him to pay?

*Isidor Rayner,* for the appellee.

No authority can be found that justifies the action of the administrator. The liberal rule of the English

Courts, in which an administrator receiving no compensation is only liable for the same degree of negligence as is a bailee without hire, would not exonerate the administrator in this case; and when the cases, both in England and here, are examined, it will be found that the most favorable construction that has been given to the discretionary powers of an administrator would not reach the extreme view that the administrator has taken of his rights and duties in this matter. 2 *Woerner's American Law of Administrators, page* 651, *secs.* 310 *to* 324; *Schouler's Executors and Administrators, secs.* 242, 265, 309, 315, 385, 388; *Williams on Executors,* (6*th Am. Ed.) page* 1899, *sec.* 1800, *title Devastavit; Norden vs. Leven,* 1 *Freeman's Reports,* 442; *Jenkins and Wife vs. Plombe,* 6 *Modern Reports,* 94; *Powell vs. Evans,* 5 *Vesey,* 839; *Norden vs. Levet, Sir Thomas Jones' Reports,* 88; *Bacon and Sullivan, Adm'rs vs. Howard,* 20 *Md.,* 191; *Dorsey vs. Dorsey,* 10 *Md.,* 471; *Seighman vs. Marshall, Ad'mr,* 17 *Md.,* 550; *Cooper, Ad'mr vs. Williams,* 109 *Indiana,* 270; *Gray vs. Swain,* 2 *Hawks,* (*N. C.*) 15, 17; *Wyman's Appeal,* 13 *N. H.,* 18; *Wheatley vs. Martin's Ad'mr,* 6 *Leigh,* 62; *Klein vs. French,* 57 *Mississippi,* 662.

BRYAN, J., delivered the opinion of the Court.

Joseph D. McGuire filed an account as administrator of Thomas B. Dorsey, deceased, in the Orphans' Court of Howard County. John G. Rogers, a creditor of the deceased, filed an exception to the account and alleged the following reason, "Because the costs allowed said administrator in the Court of Appeals in the case of *Murphy and Co. vs. McGuire, Adm'r,* are not properly allowable, and for other manifest inaccuracies, unlawful charges and discrepancies apparent upon the face of said account." The Orphans' Court ordered that the costs in the case mentioned, both in the Superior Court of

Baltimore City and in the Court of Appeals should be rejected, and that the administrator should bring into Court the sum of $1425, with interest from the 29th day of May, 1890, being the amount of a judgment in the Superior Court in favor of said McGuire against John Murphy and Co., as assets of the estate. The administrator appealed from this order.

The order of the Orphans' Court was not embraced within the limits of the exception to the administration account. We will, however, consider the order without regard to this objection. A judgment had been obtained by the administrator against Murphy and Co.; on appeal by the defendants, this Court reversed the judgment, and refused to order a new trial. The opinion of the Court was, that there was no legally sufficient evidence in the case to entitle the plaintiff to recover. Under ordinary circumstances, this adjudication ought to put an end to all further litigation on this subject. It would be a singular solecism in jurisprudence, if any man was responsible for the payment of a null and void judgment. But it is supposed that the circumstances of this case impose a peculiar responsibility on the administrator. At the trial of the case in the Superior Court, exceptions were taken by the defendants; but they were not signed and sealed by the Court within thirty days after the verdict, as required by the local law of Baltimore City. The plaintiff, however, gave his consent that they might be signed and sealed; and the defendants' appeal was brought to this Court. Without the plaintiff's consent the exceptions could not have been perfected; without the exceptions the appeal would not have presented the questions in the case; without such an appeal the judgment could not have been reversed, and the plaintiff could have collected it. Hence, it is insisted that the loss of the judgment was directly caused by the plaintiff's conduct, and that he ought to

McGuire, Adm'r *vs.* Rogers.

be held responsible for it. If there were a breach of duty on the part of the administrator, he must be visited with the consequences of official dereliction. An administrator is required to be faithful and diligent in his office; it is one of great trust and responsibility. If any loss is sustained by the intestate's estate from his negligence or imprudence, he will receive a rigorous measure of justice. As far as he can do so, he must collect all the debts due the estate. But from the nature of the case, he is invested with a considerable degree of discretion in the discharge of his duties. In the prosecution of a suit, many occasions arise where great injustice may be done under the cover of rules of practice. A case might be non-suited, or a judgment by default might be taken, on account of some casual oversight or omission of the opposing counsel, and in this way justice might be entirely defeated. We should be shocked and startled, if we were told that we were expected to decide that it was the duty of counsel to make use of every advantage of this kind which circumstances might place within his reach, and that for a failure to do so, he would be liable to his client for a breach of professional obligation. And yet the relation between client and counsel is of an exceedingly close and confidential character. A lawyer is under the highest obligation to defend his client's interests, and to secure him all his rights. Neither ought we to hold that an administrator is under the bounden duty to take such advantages. And universal experience will show that suits brought by executors and administrators are prosecuted in the same way as suits brought by other descriptions of persons; and it has never been suggested that it was not allowable to waive unfair advantages, which would not be insisted upon in other cases. So we would say that executors and administrators must prosecute suits belonging to their trusts with honesty, intelli-

McGuire, Adm'r *vs.* Rogers.

gence and fidelity; but that they are not deprived of the ordinary discretion which belongs to other suitors. They are not obliged to maintain an unjust claim; nor are they obliged to prevent a suit from being fairly tried. In this particular case, the head and front of the offence, charged on the administrator, is that he permitted the questions in the suit to be brought before the Court empowered to make the final and authoritative declaration of the law, when he had it in his power to prevent it. According to the decision of that Court, he was not entitled to the judgment which had been rendered in the Superior Court. We are not willing to say that his official duty required him to keep the question of legal right out of the reach of the tribunal appointed by the law to determine it. The forms of law and the rules of practice would have enabled him to do this; but the result would have been, that he would receive the fruits of a judgment not really and justly due, but coming within his power through an erroneous administration of the law. He has not caused the loss to his intestate's estate of anything which it was legally entitled to receive, and it would be contrary to the morality of Courts of justice to hold him penally responsible because he did not collect a claim, which the law in its most solemn manner has decided not to be due.

We must reverse the order of the Orphans' Court.

*Order reversed,*
*with costs.*

(Decided 9th April, 1891.)