SULLIVAN *v.* DOYLE, ADMINISTRATRIX

[Nos. 182-183, October Term, 1948.]

*Decided June 28, 1949.*

Before MARBURY, C. J., DELAPLAINE, COLLINS, GRASON, HENDERSON AND MARKELL, JJ.

Submitted on brief by *Paul Berman, Sigmund Levin, Frank F. J. Daily* and *Theodore Berman* for the appellant.

Submitted on brief by *William Greenfeld, Reuben Shiling* and *Francis J. Valle* for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

This proceeding was brought by Juanita Sullivan in the Orphans' Court of Baltimore City to remove Nancy E. Doyle from her office as administratrix of the estate of Julia T. Lushbaugh, deceased.

Petitioner, who is 31 years old, is the only child of the deceased. She resides in Baltimore County with her husband and two children. She testified that her husband is a chronic alcoholic, and that she has been supporting herself as well as her husband and children. Mrs. Lushbaugh had such a strong dislike for her son-in-law that she became estranged from her daughter, and from 1943 until her last illness in the Bon Secours Hospital in 1948, she resided at the home of her sister, respondent, on East 20th Street in Baltimore. However, petitioner called at the hospital to see her mother when she was dying, and at that time authorized respondent to make arrangements for the funeral. Mrs. Lushbaugh died intestate on July 6, 1948.

Petitioner testified that on the evening of July 14 respondent came to her home and stated that she was responsible for the funeral bill and other expenses, and was anxious to get things in order, but the banks refused to give her any information unless she got a paper signed by petitioner. She produced a form for renunciation of the right to administer, and asked petitioner to sign it. She suggested that it would facilitate the settlement of the estate, and would save petitioner inconvenience. Petitioner quoted her aunt as saying: "I want to get things straightened out, because I am responsible for the bills, and I want to help you and the children. I don't want anything else for myself." Petitioner declared that she agreed to sign with the understanding that no commissions or fees would be charged for the settlement of the estate. Respondent's sister, Mary W. Fuller, and her son were waiting for them in their automobile. Petitioner accompanied them to a notary public,

before whom she and Mrs. Fuller signed the renunciation. Petitioner further testified that she knew that her mother had some ground rents, but she did not know what else she had. Later that evening she wondered whether she had made a mistake. The next day she went to the courthouse to see what she could find out. In the office of the Register of Wills she happened to see respondent, who asked her what she was doing there. She replied that she had come "to find out if they needed a lawyer." Respondent assured her that she could take care of everything without a lawyer. They then went to the Central Savings Bank, where they were informed that there was approximately $5,000 in the account of the deceased. Respondent then said that she had an engagement, but would make inquires at other banks in a few days.

About a month later petitioner phoned to respondent to inquire about her progress, but did not receive any satisfaction. In September she phoned again, and still received no satisfaction. In November she again phoned, and this time respondent promised that she would go to the courthouse the next day to see whether any action had been taken, and would advise her by telephone. Petitioner, becoming suspicious, decided to make her own investigation in the office of the Register of Wills. Here she was shown two inventories filed by respondent. One was an inventory of cash belonging to the estate, the other an inventory of debts due the estate. According to the inventory of cash, respondent received $5,090.70 from the Central Savings Bank, and $4,158.40 from the Savings Bank of Baltimore. The inventory of debts showed that she had given Mrs. Lushbaugh a mortgage, for $3,000 on real property situated on 21st Street, and that the balance due thereon was $2,800. When respondent phoned petitioner, as she had promised, she did not offer any information, but asked petitioner to meet her at the bank on the following day. When they met, respondent disclosed that she had employed William Greenfeld as her lawyer, and asked petitioner to go

with her to his office. Petitioner testified that Greenfeld told her that they did not expect any bills, and they could settle in a few days. He then read from a list of assets that her mother had $8,100 in ground rents and over $4,000 in cash. Having seen the inventories only two days before, she inquired what had happened to the rest of the money. According to her testimony, Greenfeld replied: "Taxes and everything." Somewhat mystified, she made another trip to the office of the Register of Wills, where she found that respondent had requested $1,092 as her commission, and had also filed a claim for $2,507 against the estate. Still perplexed, she phoned from the courthouse to Greenfeld to inquire what the claim was for and he replied that it was "back board."

Qestioning the validity of the claim, petitioner thereupon retained counsel, and on December 3, 1948, she excepted to the administration account and petitioned the Court to revoke the letters that had been issued on July 15. She charged that respondent had fraudulently induced her to sign the renunciation, and had filed a fraudulent claim against the estate for board and lodging, and had otherwise attempted to defraud the estate. On January 26, 1949, the Court dismissed the petition for removal of the administratrix, though it rejected the claim for $2,507 for board and lodging and also a claim for $50 for services allegedly rendered by an auditor for the estate.

The first appeal is from the order refusing to revoke the letters of administration. We are of the opinion that the Orphans' Court should revoke respondent's letters. As Mrs. Lushbaugh was a widow, petitioner, as her only child, has the exclusive right under the Maryland statute to letters of administration. Code, art. 93 sec. 19. She testified that she had been led to believe that the estate consisted only of ground rents. In fact, respondent admitted: "I went to Mrs. Sullivan's house, and I told her the only thing I could find out about was the ground rents." Even though respondent may not have known

how much money Mrs. Lushbaugh had on deposit in the banks, she knew that she had given Mrs. Lushbaugh a mortgage for $3,000. Petitioner did not know of this mortgage until nearly five months after her mother's death. There can be no doubt that petitioner would not have signed the renunciation if she had known (1) that the assets in the estate amounted to over $20,000, (2) that respondent would request commission of over $1,000, (3) that respondent owed the estate approximately $3,000, and (4) that respondent claimed more than $2,500 from the estate for board and lodging. There can be no question that petitioner signed the renunciation under a mistake of facts concerning her mother's estate due to concealment and misrepresentation on the part of respondent. Generally, a renunciation of the right to administer an estate is revocable if it was executed under a mistake of fact. Where the mistake is purely one of law, the Orphans' Court will refuse to interfere, but mistake of facts will always be remedied as far as can be done consistently with right and justice. *Carpenter v. Jones,* 44 Md. 625, 631; *Slay v. Beck,* 107 Md. 357, 361, 68 A. 573.

It is true, as urged by respondent, that there is no statute in Maryland directing that when an executor or administrator has a disputed claim against the estate, he is required to resign before action can be taken to enforce it, or an administrator pendente lite shall be appointed to resist it. On the contrary, our statute provides that where an administrator is a creditor of the estate, the claim may be passed by the Orphans' Court if he makes the special oath required by the statute, Code 1939, art. 93. secs. 100, 101; and this Court has ruled that if any creditor, legatee or next of kin desires to resist the passage of such a claim, he may have issues sent to a court of law, or if the claim has been passed by the Orphans' Court and his rights are impaired thereby, he may appeal to the Court of Appeals *Bell v. Funk,* 75 Md. 368, 372, 23 A. 958; *Hayden v. Stevens,* 179 Md. 16, 16 A. 2d 922. Nevertheless, where an administrator,

however honest he may be, files a claim of his own against the estate, he places himself in contradictory positions, one as the representative of the estate, the other as its adversary. And it is generally held that a person in his individual capacity cannot sue himself in his capacity as administrator. *Owings v. Bates,* 9 Gill 463, 466; *Shippee v. Shippee,* 122 N. J. Eq. 570, 195 A. 728.

In this estate the administratrix, after asking decedent's daughter to sign a renunciation ostensibly for the daughter's convenience, filed a claim of her own against the estate for $2,507 without making any mention of it to the daughter. She claimed that decedent owed her for board and lodging from 1943 until her death in 1948. We are not asked here to determine the validity of her claim. We note, however, that she was asked to explain why, if Mrs. Lushbaugh owed her for board and lodging, she executed a mortgage for $3,000, and she replied that Mrs. Lushbaugh had promised to take care of her in her will. We consider it appropriate to say here that the administrator of an estate occupies a fiduciary relation often with considerable responsibility, and he should be faithful and diligent in the discharge of his trust. In the language of Judge Alvey in *Gordon v. Small,* 53 Md. 550, 556, an administrator is "the trustee and proper representative of all persons interested in the personal estate, and has the duty cast upon him by law of protecting it against all improper demands."

We also acknowledge that the fact that a person is indebted to the estate of a decedent does not disqualify him from acting as administrator of the estate. *Dorsey v. Dorsey,* 140 Md. 167, 172, 116 A. 915. But in this case it is conceded that the administratrix is indebted to the estate upon a mortgage, and petitioner claims that the mortgage is in default. Petitioner says that, while the mortgagor is required to pay $100 per month, with interest thereon, her aunt failed to prove that she made curtailment of $200, and that there is nothing to show that any interest has been paid. It is elementary that

all debts, rights and choses in action of a decedent vest in his administrator, and the law imposes upon the administrator the duty of collecting all such claims as far as he can do so. *McGuire v. Rogers,* 74 Md. 192, 199, 21 A. 723. Upon the death of a mortgagee intestate, the mortgage becomes an asset in the hands of his administrator. In whatever different capacities a person may act, he can never maintain an action against himself. *Eastman v. Wright,* 6 Pick., Mass., 316, 321. We specifiically hold that an executor or administrator cannot institute a suit at law or in equity against himself. *State, to Use of Stevenson v. Reigart,* 1 Gill 1, 32, 39 Am. Dec. 628; *Semmes v. Magruder,* 10 Md. 242, 247. It would be highly improper for respondent to institute a foreclosure suit against herself. In a court of equity particularly, an administrator is considered to be a trustee for the creditors and next of kin of the deceased.

The second appeal is from an order passed February 18, 1949, authorizing the administratrix to pay out of the estate a counsel fee of $200 to her attorney for upholding her right to administer the estate. Inasmuch as we have held that the Court erred in passing the first order, we likewise hold that it erred in passing the second. It is well settled that in allowing counsel fees in any particular case, the Orphans' Court must exercise sound judgment and discretion, and from a breach of discretion an appeal will lie. The rule has long been established that where a person has the right to adminminister upon an estate, he is entitled to pay out of the estate reasonable counsel fees incurred in the successful defense of that right. This rule was laid down in *Ex parte* Young, 8 Gill 285, by analogy to the practice of allowing an executor to pay counsel fees for the successful defense of a will. But this Court has also distinctly held that an administrator whose letters are revoked, on the ground that they were prematurely or improvidently granted, is not entitled to be allowed counsel fees out of the estate for defending his position. *Horton v. Horton,* 158 Md. 626, 634, 149 A. 552. The reason

for this rule is that legal services rendered by an attorney in defending letters of administration which are revoked cannot be said to be for the benefit of the estate.

Our attention has been called to two Acts of the Maryland Legislature, one passed in 1937, the other in 1939, relating to the allowance of counsel fees by the Orphans' Court. Neither Act repeals the rules we have just stated. The 1937 Act adds a new section to the Testamentary Law providing that for legal services rendered to an estate by an attorney at law, the Orphans' Court may, on the attorney's own petition, allow him such sums as it may deem reasonable as an expense in the administration account of the executor or the administrator during whose incumbency such services were rendered. Laws of 1937, ch. 441, Code 1939, art. 93, sec. 7. The explicit purpose of this section, obviously intended for the protection of attorneys, is to authorize the Court to allow counsel fees only for legal services "rendered to an estate." In the case before us the attorney, in defending respondent, did not render any legal services to the estate. He did not either add to or protect the estate.

In 1939 the Legislature amended the section which prescribes the order of priority in which the disbursements shall be made. This section now provides that, after funeral expenses, the next in order of priority are the administrator's costs and extraordinary expenses, not personal, which the Court may think proper to allow, laid out in the administration or distribution of the estate or in the recovery or security of any part thereof, "costs to include reasonable fees for legal services rendered upon any matter in connection with the administration or distribution of the estate in respect to which the Court may believe legal services proper, and in addition to include commissions * * *." Laws of 1939, ch. 511, Code 1939, art. 93, sec. 5. As we said in *Hayden v. Stevens,* 179 Md. 16, 19, 16 A. 2d 922, and *Gradman v. Brown,* 183 Md. 634, 39 A. 2d 808, the Legislature did not intend by the Act of 1939 to compel the Orphans Court in every case to allow counsel fees for

the attorneys for the litigant claiming unsuccessfully some interest in the estate, even if it intended to allow any fees at all for such attorneys. If the Orphans' Court were compelled to allow fees for the attorneys for all litigants seeking to advance or defend their personal interests, such allowances might conceivably result in enormous loss in the assets of an estate.

For the reason stated we will reverse both of the orders appealed from and remand the case for further proceedings.

> *Orders reversed and case remanded, the costs to be paid by Nancy E. Doyle individually.*