(Decided 11th July, 1882.)

---

James T. Watson, Administrator of James A. Watson, deceased *vs.* James T. Watson. by his next friend, James B. Crane, *et al.*

*Proof of Individual claim of Administrator in the Orphans'
Court against the Estate of his Intestate—Construction of
sec. 93, of Art. 12, of the Local Code, relating to powers
conferred upon Register of Wills of Harford County—
Deputy Register—Answers in Plenary proceedings—Sec.
103, of Art. 16, of the Code, relating to Answers in Chancery,
not applicable to Plenary proceedings in the Orphans' Court.*

To entitle the individual claim of the administrator of a deceased
    person, against the estate of the deceased, on a promissory note
    made by the deceased, to be passed by the Orphans' Court, it is
    necessary that it be accompanied by the proof prescribed by secs.
    87 and 96, of Art. 93 of the Code.

The jurisdiction and power conferred upon the Register of Wills of
  Harford County, by sec. 93, of Art. 12, of the Local Code, to be

exercised by him during the recess of the Orphans' Court, cannot lawfully be delegated to, or exercised by his deputy in his absence.

The answer to, be filed in a plenary proceeding in the Orphans' Court must be under oath; but the solemn affirmation of the respondent to the truth of the answer, has the same effect as an oath.

The provision of the Code,—Art, 16, sec. 103,—regulating the practice in chancery, with respect to the effect of an answer, where the respondent has not been called upon to answer under oath, has no application to plenary proceedings in the Orphans' Court.

APPEAL from the Orphans' Court of Harford County.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., ALVEY, IRVING, and RITCHIE, J.

*Henry D. Farnandis,* for the appellant.

Exceptions are not allowed in the Orphans' Court. *Mayhew vs. Soper,* 10 *G. & J.,* 366, 372.

The Act of 1825, ch. 117, sec. 12 of Art. 5 of the Code, does not apply to appeals from the Orphans' Court. *Cover, et al. vs. Stockdale and Wife, &c.,* 16 *Md.,* 1.

The passage of the claim of an executor or administrator by the Orphans' Court, is *prima facie* evidence of its correctness, and shifts the burden of proof to the creditor or distributee who impeaches it. *Stevenson vs. Shriver,* 9 *G. & J.,* 324.

If there were any irregularity in its passage, the claim was fully proved by the testimony in the case.

The answer of the appellant being under oath as required by Art. 93, sec. 249, of the Code, must prevail, unless contradicted by two witnesses, or by one witness and pregnant circumstances.

"The rule has been referred more strictly to the equitable principle on which it is founded, namely, the right to

equal credit with any other witness which the defendant may claim in all cases where his answer is positively, clearly and precisely responsive to any matter recited in the bill." 2 *Taylor on Ev.*, sec. 882.

The statutory change as to answers in chancery made by sec. 103 of Art. 16 of the Code, does not apply here.

The rejection of the testimony of James T. Watson, the administrator, was error.

*William Young*, and *Henry W. Archer*, for the appellee.

The appellant's claim was unaccompanied by the proofs and vouchers expressly required by law, without which the Orphans' Court is forbidden to allow such claim, and surely the register's deputy, whose powers and duties are purely ministerial, could not do so.  *Art. 93, secs.* 87, 96, 97, *of the Code.*

Even if the appellant's claim had been regularly passed upon *ex parte* proof, it would still have been open to contest, "as if no such order had been passed." But it has in fact been rejected by the Orphans' Court, and the whole burden of establishing it by sufficient proof rests upon the claimant. The case of *Stevenson vs. Shriver*, 9 *G. & J.*, 324, referred to by the appellant, was after a decree of the Orphans' Court, allowing credit for claim in an administration account. The Court did not mean, in that case, to ignore the Act of Assembly. *Art.* 93, *sec.* 101, *of the Code.*

The second point made by the appellant is, that his answer to the infant's petition is not only admissible in evidence, but is entitled to the weight of two witnesses, or one with pregnant circumstances. The rule referred to by the appellant is confined to Courts of Chancery, and even there it has been changed by Act of the Legislature, so that the answer of a defendant is no longer admissible in evidence, unless read by the opposite party. If the chancery rule is to be extended by analogy to proceedings

in the Orphans' Court, it can only go with the changes engrafted upon it.    *Art.* 16, *sec.* 103, *of the Code;* 2 *Taylor's Ev.*, 882.

BARTOL, C. J., delivered the opinion of the Court.

The order of the Orphans' Court from which this appeal was taken, as it appears in the record, is without the signatures of the Judges, as required by the *Code*, Art. 93, sec. 251; but this defect in the transcript has been remedied by the agreement of counsel, and the only question presented for our decision, is whether the Orphans' Court was right in disallowing the claim of the appellant as a creditor of James A. Watson, deceased.

The voucher of the claim is a promissory note as follows:

"Fallston, Nov. 3rd, 1875.
"On demand, I promise to pay Jas. T. Watson, his heirs or assigns, the sum of two thousand four hundred and thirty four $\frac{17}{100}$ dollars, for value received.
   $2434.17.                    JAS. A. WATSON."

On the note is the following endorsement:

"The within note covers all obligations that have heretofore been made by the within Jas. A. Watson to Jas. T. Watson.
                        JAMES T. WATSON."

The body of the note, the memorandum endorsed upon it, and the signature to the note were all proved to be in the hand-writing of the deceased, who died on the 9th day of February 1879.  On the 24th day of the same month, letters of administration upon his estate were granted to his father, the appellant, who returned an inventory.

Among the claims exhibited against the estate was that of the appellant, as appears from the following endorsement on the note:

"July 19th, 1879, proven before me this day.

Wm. S. Richardson,

R. W. H. Co."

Across the face of the note was the following:

"July 19th, 1879. This note will pass for its portion of assets when paid."

"Wm. S. Richardson.

R. W. H. Co."

These entries, including the name of Mr. Richardson, the register, are in the hand-writing of B. H. Hanson, deputy register, by whom they appear to have been made when the register was not present. The proof upon which the claim was passed, does not appear in the record.

To entitle the claim to be passed by the Orphans' Court, it was necessary that it should be accompanied by the proof prescribed by *secs.* 87 and 96, of *Art.* 93, of the Code, which does not appear to have been done.

The jurisdiction and power conferred upon the register of wills of Harford County, by *sec.* 93, of *Art.* 12, of the Local Code, to be exercised by him, during the recess of the Orphans' Court, cannot lawfully be delegated to, or exercised by his deputy in his absence. It follows that the claim of the appellant does not derive any force or validity from the endorsements thereon made by the deputy register, under the circumstances disclosed by the testimony.

On the first day of March 1880, at the instance of the appellant, an order was passed by the Orphans' Court for the sale of certain stock belonging to decedent's estate, for the payment of debts. On the following day this order was suspended. On the 5th day of April 1880, a petition was filed by Lottie B. Watson, widow of the intestate, for herself, and as next friend of her infant son James T. Watson, which was answered by the appellant. It is not necessary here to refer more particularly to this petition and answer.

Leave being granted to amend the petition, an amended petition was filed on the 6th day of May 1880, in the name of James T. Watson, infant, by his next friend, wherein it was alleged, among other things, that the order of sale was unnecessary, and ought to be rescinded, because the money and other available assets in the hands of the administrator, were sufficient to pay the debts and cost of administration.

The petition further alleged that "your petitioner has been informed that the said administrator claims to be a creditor of said deceased, upon a certain promissory note for $2434.27, or thereabouts, which your petitioner has been informed and believes was paid and released during the life-time of said deceased; * * *. * * your petitioner denies that said deceased was justly and *bona fide* indebted to said administrator at the time of his death, on said note or otherwise, and prays that his said pretended claim may be disallowed and rejected."

Appended to the petition is the affidavit of James B. Crane, the next friend, setting forth that the matters therein stated are true to the best of his knowledge and belief.

In his answer to the petition the appellant states "that the said note for $2434.27 is due to this respondent justly and *bona fide ;* that no part of the sum of money intended to be secured thereby, has been received, and no other security or satisfaction given for the same, and that it doth not appear from any book or writing of his intestate, that any part of said claim hath been discharged, or any security or satisfaction given therefor, and to the best of this respondent's knowledge and belief, no part thereof has been paid, or in any way discharged, secured, or satisfied, and this respondent denies that it was paid and released during the life-time of said intestate, or at any time."

The answer was verified by the solemn affirmation of the appellant, in open Court.

After general replication, the Orphans' Court proceeded to hear testimony, and passed an order disallowing the claim of the appellant, from which the present appeal was taken.

After a careful examination of the evidence, we think the existence and validity of the claim were abundantly established, and that it ought to have been allowed.

The appellee having instituted a plenary proceeding, the appellant was required to answer the petition under oath. *Cover vs. Stockdale,* 16 *Md.,* 1. The solemn affirmation of the appellant to the truth of the answer has the same legal effect as an oath. *Code, page* 10, *Rule* 9. The provision of the *Code, Art.* 16, *sec.* 103, regulating the practice in Chancery, with respect to the effect of an answer, where the respondent has not been called upon to answer under oath, has no application to plenary proceedings in the Orphans' Court. But the proof of the claim does not rest entirely upon the oath or affirmation of the appellant. The body of the note and the signature thereto were proved to be in the hand-writing of the deceased. The note was in the possession of the appellant, was produced by him as a debt due from his intestate, and not shown or pretended to have been at any time out of his possession.

These facts taken in connection with the answer are sufficient to establish the validity of the claim, and to cast upon the appellee the *onus* of proving that the amount due upon the note was paid by the deceased in his lifetime. This burden the appellee has assumed and for the purpose of proving that the note was paid by the intestate, *Mrs. Watson,* his widow, was examined as a witness. She stated that on the 16th of November 1878, her husband being in failing health, moved with his family to the home of his father, the appellant, where they remained till his death; that on Monday November the 18th 1878, her husband showed her a receipt in full for the amount of

the note held against James A. Watson by James T. Watson. Her husband asked her to put it in his secretary with his other valuable papers, which she did. She did not see the receipt afterwards.

The secretary was kept locked, her husband kept the key till his death, and she kept it afterwards. The next week after her husband's death Mr. James T. Watson, the appellant, asked her for the secretary; said he would like to keep it for himself; she gave the key up to him, and has not been to the secretary since.

When asked to state the contents of the receipt, the witness said "it was a receipt in full from James T. Watson to James A. Watson, for full amount of the note held by James T. Watson against James A. Watson, for money advanced him when he commenced business."

When asked on cross-examination to state what were the words of the paper she answered "Received in full from James A. Watson, the full amount of the note held against James A. Watson by James T. Watson; there was a date to it, it was at the end of the paper, the date was November 18th, 1878."

Being asked was the amount of the note specified, she said "It stated for money advanced him when he commenced business."

Her testimony does not distinctly show that the receipt of which she spoke referred to the particular note in question, it did not specify the amount or date of the note, nor does the witness say that she ever saw the note. The transaction of which she speaks took place at the house of the appellant where the note was, and which was not given up to the intestate, but remained in the possession of the appellant. The proof in the record is, that the deceased was an accurate business man, and it is improbable in itself, that he would have taken a receipt in the form described by the witness, and have left the note in the possession of the appellant. The receipt which the

witness saw must have referred to some other business transaction between the deceased and his father, and in the lapse of time after the occurrence, her memory did not enable her to speak with accuracy of the terms of the paper.

The theory of the appellee is, that the money due on the note was paid by the deceased. There is no proof of the payment of any money by him, and no evidence produced that he had in his possession at the time, or at any time after the date of the note, sufficient means, not otherwise employed, to pay the note.

On the contrary, the testimony of Caleb J. Moore, who was his partner from January 1st 1874 till November 30th 1875, and who was familiar with his business affairs, justifies the inference that his means and resources were not sufficient to enable him to pay so large a sum. The endorsement on the note, made by the deceased, shows that the money to enable him to commence business was furnished by his father, and that the note was given for the money so advanced at different times. The business in which he was engaged was keeping store in a country village.

When he retired from business, on account of failing health, at the end of November 1878, he sold out to J. Wilson Moore his interest in the firm of Wilson & Moore, for $2800, of which he received $1800 in cash, and Moore's note for the balance $1000, payable in two years. This note is still in the hands of the administrator. The deceased paid, December 16th 1878, $382 to the Building Association "to complete his shares therein," and had at his death $1350 deposited in the Citizens National Bank, and had in hand $81 in cash. So that it does not appear that any part of the ready money received by him at that time was applied to the payment of the note due appellant. The testimony of Mrs. Watson with regard to the receipt is uncertain and inconclusive. Upon the whole

testimony in the case, we are of opinion that the appellee has failed to prove that the note in question has been paid; and therefore the same ought to be allowed as a just claim against the estate of the intestate.

The order of the Orphans' Court will be reversed, and the cause remanded.

*Order reversed, &c.*

(Decided 11th July, 1882.)