## CATHERINE E. MAGIN ET AL. *vs.* FRANK A. NINER, EXECUTOR ET AL.

*Direction in Will That Real Estate be Appraised—Jurisdiction of Equity to Appoint Appraisers.*

When a testator directs an appraisement of his real estate to be made and authorizes certain persons to take the estate at the appraised value, but the will makes no provision as to the mode of making the appraisement, a Court of Equity has jurisdiction to appoint appraisers, but not the Orphans' Court.

*Decided March 23rd, 1909.*

Appeal from Circuit Court for Carroll County (THOMAS, C. J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE and HENRY, JJ.

*Ivan L. Hoff* and *Guy W. Steele,* for the appellants.

*Jas. A. C. Bond* and *Francis Neal Parke* (with whom was *John Milton Reifsnider* on the brief), for the appellees.

HENRY, J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court for Carroll County, sitting in equiy, and involves a construction of part of the first item of the last will and testament of John Niner, late of said county, deceased, which item reads as follows: "I give and devise to my two sons Frank A. Niner and Edward Niner, all my real estate I now possess consisting of two farms. The home farm of three lots of land known as the Trumbo Wardenfelt and Houck lots containing about 27 acres more or less, also one other farm known as the Nelson farm of three lots of land known as the Nelson, William and Englar lots containing about 24 acres of land more or less after the expiration of one year from the time of my death and the said land is then to be appraised and my two sons shall have the privilege of taking said farms at the appraisement (that is Edward and Frank A. Niner), and it is my will that my son Edward Niner shall have his choice of said two farms at the appraisement if he so desires; and in case neither of my sons Edward Niner or Frank A. Niner should take said farms at the appraisement then the said two farms shall be sold at public sale, and the proceeds in money of said sale of land to be equally divided among my five children: John J. Niner, Mary R. Niner, wife of William Freyman, Frank A. Niner, Catherine E. Niner, wife of Frederick Magin, and Edward Niner their heirs or assigns, share and share alike to the five children of said testator."

Letters testamentary on the estate were granted to Frank A. Niner, who is named as executor in the will. In carrying out the terms of the will, the executor filed a petition in the Orphans' Court of Carroll County stating that he had selected two suitable persons to make an appraisement of the real estate, whereupon the said Court approved the selections made and directed a warrant to issue to them for the appraisement of the property, after taking the oath required by law and giving notice to the parties in interest of the time and place appointed to make the appraisement, but these proceedings were suspended, upon objections made thereto by

other parties in interest, pending proceedings in the Court of Equity.

The bill in this case was filed by Catherine Magin and others against Frank A. Niner, executor, and Frank A. Niner and Edward Niner, and sets forth, in substance, after reciting the second item of the will, that more than one year has elapsed since the death of John Niner, that the authority to appraise the real estate is void for uncertainty, and that by a true construction of the will the property should be sold and distribution be made of the proceeds. The bill also alleges that the executor has so far administered upon the personal estate of the decedent that nothing more remains to be done by him except to state an account and to make distribution. Further the bill says that "by reason of the doubt arising under terms of said last will and testament of John Niner, deceased, and the conflict of views as to the proper construction thereof it is imperative that your Honorable Court assume jurisdiction and control of the further administration of the estate of the said John Niner, deceased," and prays that the Court may take jurisdiction in the premises and direct and advise the executor in the further administration of the trust, that the real estate be sold, that an account be taken of the personal estate of the decedent and closes with a prayer for general relief.

The defendants answered, claiming that the appraisement of the real estate, as directed in the will, was the first duty now devolving upon the executor, and that the land cannot be sold until it has been appraised and the two sons named have refused to take it at the appraised value. The answer also sets forth the proceedings for appraisement in the Orphans' Court, and charges that the Court of Equity has only a right under the circumstances to assume jurisdiction for the purpose of construing the said will, and thereafter it will be the duty of the executor to proceed in the administration of the estate in the Orphans' Court in accord with the views of the Court of Equity.

By agreement of counsel, the case was submitted on bill and answer, and the Court below passed a decree for the sale of the real estate, and, assuming jurisdiction of the entire subject-matter, ordered the executor to proceed with and complete his administration of the estate in the Court of Equity. From this decree an appeal has been taken.

Practically the only question before us relates to the provision for the appraisement of the real estate. It is clear what the intention is. The power to appraise is plainly given, but there is no donee of the power and no instructions are given as to the manner in which such appraisement shall be made. Is this provision too indefinite to be executed? If not, by whom and in what manner shall it be carried into effect?

While a power of sale in a will, which names no trustee to make the sale, devolves upon the executor, if the proceeds are to be distributed by him, and he has power to arrange all details of the sale, such as the time, place and terms thereof, and while a power to appraise for the purpose of offering for sale the property might be considered in a certain sense as presenting an analogous situation, yet in this case, where the executor is one of those who is granted the privilege of taking part of the real estate at its appraised value, it would be clearly inequitable and against the dictates of natural justice to allow him to do so. Nor can we find any authority for the exercise of such a power by the Orphans' Court, whose jurisdiction as respects the appraisement of real estate is limited to such cases as may arise under the provisions of sec. 125, Art. 81, sec. 158 and sec. 205 of Art. 93, of the Code of Public General Laws. An attempt to exercise the power by the Orphans' Court would be a nullity. *Thom* v. *Thom,* 101 Md. 444.

The proposition, therefore, narrows down to the point as to whether the power may be exercised by a Court of Equity. We have not found any case precisely in point, but a consideration of the nature of the duty and the broad powers of a

Court of Equity, leads us to conclude that such a Court may carry out the provisions of·the will.

In the first place the power is one in which the two sons have a direct beneficial interest. Let us suppose that the will provided that if the two sons did not take at the appraisement the land should be sold for division among the other children, excluding the two sons. Such a presumption in no way affects the principle involved, but its statement better discloses the injustice that might result to these two sons if a plain direction for their benefit is held to be incapable of execution. The privilege of buying at an appraised value out of the open market might be a valuable one, and the testator clearly intended that the two sons named should have this advantage. While the act of appraisement itself is not a trust, yet it is a ministerial duty preliminary to the execution of an imperative provision of the testator's will, the carrying out of which is in the nature of a trust to be performed for the benefit of the two sons.

In sec. 249, *Perry on Trusts,* it is said: "In all such·cases where parties have an imperative power or discretion given to them, and they die in the testator's lifetime, or decline the trust or office, or disagree as to the execution of it, or do not execute it before their death, or if from any other circumstance the exercise of the power by the party entrusted with it becomes impossible, the Court will imply a trust and will put itself in the place of the trustee and will exercise the power by the most equitable rule; and although there may be great *difficulties* and *impracticabilities* in the way, yet the Court will exercise the power and enforce the trust."

And the same author says: "If the trust or power can by any possibility be exercised by the Court, the non-execution by the party entrusted should not prejudice the party beneficially interested."

Unless the power or the trust is one of a personal nature, intended to be exercised or not according to the discretion of the person named, we can see no difference in principle or logic between the Court acting in a case where no donee of

the power is named and in a case where the donee named for any cause fails or refuses to act. In both cases the power exists in all its vigor, but in the one the testator has failed to name in the instrument the donee by whom it shall be executed, and in the other the person so named has failed to carry out the trust reposed in him. In either case, however, the Court can itself assume the execution of the power and will carry it in effect in good faith and in the usual manner of doing the business.

Now there is nothing mysterious or uncertain about the procedure necessary to appraise property in this State. There are no insurmountable difficulties in the way of carrying out the testator's will. An appraisement in legal and business matters has a definite meaning, which will save the Court from any vague guessing as to what the testator desired. In this State, the term denotes the valuation of goods and chattels or real estate by two persons of suitable qualifications, fair, impartial and disinterested—having knowledge of the property to be appraised and with intelligence to ascertan its value after inspection and inquiry on the subject. This is the uniform understanding of an appraisement and of the practice in making it, and we do not think that a Court of Equity would be venturing on uncertain ground by appointing two persons, upon proper application in this case, with the qualifications above given, to appraise the real estate of John Niner and make return of such appraisement to the Court appointing them. Upon notice of such return, it will then be incumbent upon the two sons, Edward and Frank A. Niner, within a reasonable time, to be fixed by the Court, to accept, or refuse to accept, the land at such valuation. If they accept, the Court can appoint a trustee to convey the land to them, or could direct the executor to do so under the power given him to sell and convey the real estate in the last item of the will. The Court can see that this section of the will of John Niner, including the appraisement, is fairly carried out. It can be done at a trifling cost, and we can see no impossibilities in the way.

As stated above and, as remarked in the opinion of the learned Court below, we have not been able to find any case precisely in point to the one before us, and must decide it upon general principles.

In the case of *Irving* v. *Dekay,* 9 Page Chy. 521, where the will read: "All my property shall be taken in one valuation to be made by appraisers to be appointed by my executrix and executors, or a majority of them, or of the survivor of them," the Court said it would "provide for the appointment of appraisers according to the direction of the will if the parties cannot agree upon them without the assistance of the Court."

In *Bull* v. *Bull,* 8 Connecticut, 47, in which the executors' having died without executing a power of appointment to dispose of the residue of testator's property "among our brothers and sisters and their children, as they shall judge to be most in need of the same, this to be done according to the best of their discretion," the Court directed a reference to determine who were the most needy. *Hill on Trustees,* 67.

Another point raised by the pleadings in the record is that the province of the Court of Equity in these proceedings is limited to a construction of the will, and that the administration of the estate, under the will, must be completed in the Orphans' Court which first assumed jurisdiction. As a general proposition it is true that where Courts have concurrent jurisdiction, the one first assuming it is entitled to retain the same to the end of litigation. This is undoubtedly true where the matter for settlement is single and the jurisdiction of both Courts over it is unquestioned. But in the present case we have a more complicated situation. The Orphans' Court has jurisdiction over the settlement of the personal estate and likewise under the will to order the sale of the realty. But it has no authority, as we have seen above, to carry out the provision in reference to the appraisement nor has it jurisdiction to dispose of any further questions that are not unlikely to arise over the proper construction of the testator's will. The Court of Equity, not only has concurrent

jurisdiction over the matters mentioned with the Orphans' Court, but has exclusive jurisdiction in the matter of appraisement and in any subsequent question that may arise over the will. In order to prevent a multiplicity of suits, or a conflict of proceedings, we think therefore that the Court of Equity should be permitted to retain full and complete control over the settlement of the estate, so that all matters may be disposed of under the guidance of one tribunal. *Story's Eq. Jurisprudence*, Vol. 2, sec. 64, etc.

It follows from what we have said that the decree of the lower Court must be reversed, in so far as it directs a sale of the real estate, and the cause remanded to the Court of Equity for further proceedings in conformity with this opinion.

*Decree reversed and cause remanded, the costs to be paid out of the estate.*