JAMES DUNNIGAN *vs.* ANDREW CUMMINS, ET AL.

*Administrators; refusal to defend suits; removal; discretion in pleading limitations; Code, Art. 93, sec. 97; failure to make full return in inventory; Code, Art. 93, sec. 243.*

The refusal of an executor to defend suits against the estate is sufficient to justify the Orphans' Court in removing him from office.                              p. 298

If an administrator, in the honest exercise of his judgment, supposes a claim to be just, it is discretionary with him whether or not he shall plead the statute of limitations against the claim.                              p. 298

Where there was a question of title in the administrator as to several small items of personal property which he had failed to return in his inventory, and it was not shown that in failing to make the said return, he was actuated by fraud or dishonest motives, it is no ground for his removal; the proper remedy is to proceed under section 243 of Article 93 of the Code of Public General Laws.                              p. 298

*Decided April 4th, 1911.*

Appeal from an order of the Orphans' Court of Harford County.

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS, PATTISON *and* URNER, JJ.

*Stephenson A. Williams* and *Frederick R. Williams* submitted a brief for the appellant.

*E. II. Webster* (with whom was William H. Harlan on the brief), for the appellees.

PATTISON, J., delivered the opinion of the Court.

This is an appeal from an order of the Orphans' Court of Harford County.

The appellees filed their petition in the Orphans' Court of Harford County asking that the letters of administration granted unto the appellant upon the personal estate of his brother, Andrew Dunnigan, deceased, be revoked. In their petition they allege, among other things, that James P. Dunnigan, a nephew of the deceased; Ella N. Dunnigan, a niece of the deceased and daughter of the administrator, and one Lawrence Forwood had each filed against the estate of the decedent a claim which was old and stale, without merit, and "not due by the estate" of the decedent. The petition also alleges that upon each of these claims suit had been brought in the Circuit Court for Harford County against the administrator, and that he, although notified by the petitioners that the demands made in said suit were unjust and not properly chargeable against the estate of the decedent, had refused to defend the suits, and further charges that the administrator is abusing the trust reposed in him and is colluding with the claimants to enable them to absorb the whole personal estate of the decedent and defraud such petitioners of their interest in said estate. The petition also alleges that the administrator in passing his account, intended by him to be a final account so far as the assets of the decedent are concerned, wilfully concealed and failed to charge himself with certain chattels and money which are in his hands belonging to said estate.

The appellant answered admitting the filing of the claims mentioned in the petition by the parties therein named. The answer also admitted that suits had been instituted thereon, but denied that he was abusing the trust reposed in him by colluding with the claimants to enable them to absorb the estate of the decedent and to defraud the petitioners of their interest therein, as alleged in the petition. In the answer he alleges that the charge made by the petitioners that the trust is not being properly administered is without foundation in fact, and further alleges that as soon as he found that claims were filed against the estate of the decedent by the claimants aforesaid, he rejected said claims and advised each of the claimants that they would have to prove their respective claims before a jury, and in so doing thought he was fully discharging his duties to said estate. The answer further alleges that the petition filed was for the purpose of compelling the respondent to plead limitations to said claims, which he declined to do, believing that the discretion in reference to said plea, so far as it concerned the estate of the decedent, is by law reposed in him alone.

To this answer the formal replication was filed and evidence thereafter was heard upon the issues thus joined, and upon which an order was passed by the Court revoking the letters of the appellant as administrator. It is from that order that this appeal is taken.

The evidence discloses that Ella Dunnigan, one of the claimants, first placed her claim, for collection, in the hands of Mr. Williams, counsel for the administrator, but as it was afterwards rejected by the administrator, he suggested that she employ some other attorney to look after her claim, inasmuch as he was counsel for the administrator, and at her request turned it over to Mr. Carver, an attorney of the Harford County Bar.

Thereafter Mr. Carver called upon Mr. Williams to ascertain if this claim, as well as the claim of Dunnigan and Forwood, could be settled without suit. He was told by Mr. Williams that they could not, that the administrator intended

to fight the claims and that they would have to go to Court. Upon this he docketed the suits. Mr. Williams was likewise called upon by both Mr. Webster and Mr. Harlan, counsel for the petitioners, in relation to these claims. Mr. Webster testified that when asked by him what he was going to do about these claims, Mr. Williams said he was going to let them sue and get judgment, and when asked by Mr. Harlan to have the administrator plead the Statute of Limitations, Mr. Williams replied that the administrator would not plead limitations, and when told by Mr. Harlan that it had been said that a way could always be found to make an administrator plead the statute, he replied by saying that the administrator would oppose any effort made to require him to file such plea, contending that this matter was left to the honesty and discretion of the administrator. Mr. Harlan testified that the conversation had with Mr. Williams left upon his mind the impression that the administrator did not intend to defend these suits; this, however, was repudiated by Mr. Williams. As to these claims, Mr. Williams testified that the administrator assumed the position that in his opinion these claimants were possibly entitled to something, but how much he was not prepared to say, and he thought it best that the claims should be submitted to a jury for its determination.

The administrator, when asked why he rejected these claims and required suit to be brought thereon, replied "I do not want to settle these claims unless they prove them before a jury and know whether they were entitled to it or not." He further stated that his daughter had lived with her uncle about six years, and when asked by Mr. Harlan, upon cross-examination, whether he had examined the checks and receipts of the decedent and had made investigation to see if these claims had been settled, he said he had examined the papers of the decedent and all of his checks for years back, but he found no evidence that any of these claims had been paid. When asked why he refused to pay Forwood's claim, he replied that he did not think the estate owed it, and when

further asked if he thought it was an honest bill, stated he did not know whether it was or not. He was then shown the bill of James P. Dunnigan for board and asked if he thought the estate owed that claim. He replied by saying "He might have owed it, I would not say," and when asked if he thought it was an honest bill, said he was unable to say, although there had been dealings between them and the decedent had at different times stopped at his nephew's, James P. Dunnigan's, home, but, like the other bills, he preferred the Court to decide it. He was not further interrogated in relation to the claim of his daughter. Other witnesses, produced on the part of the petitioners, likewise testified to the fact that Ella Dunnigan had for several years lived with and kept house for her uncle.

The evidence discloses that certain articles, said to have been the property of the estate, were not returned by the administrator in his inventory of the property of the estate. It was shown that the decedent had, at the time of his death, a watch said by some of the witnesses to be worth twenty-five or fifty dollars that was not returned in the inventory but withheld by the administrator. It was likewise shown that several of the petitioners had agreed that their uncle, the administrator, should not return this watch, but should withhold it as his own property, as they did not wish it go out of the family and regarded him as the proper one to have it. There is no evidence, however, that others of them had agreed to this or had been consulted, nor was the administrator examined in relation thereto.

By the evidence it was disclosed that in addition to the watch, the administrator had failed to return, as part of the estate, one pair of sleeve buttons, two feather beds and ten dollars in cash. The sleeve buttons had, the year before the death of the decedent, been given to him by his niece, Ella Dunnigan. The administrator, as he stated, was present at the time when these buttons were presented by his daughter to her uncle. When so presented, the decedent said to his niece, "Why, Ella, I will wear them, but do not think it will

be long; when I am gone you can have them." Thereafter he "never saw the sleeve buttons or had anything to do with them."

As to the feather beds, the administrator stated that when his daughter Ella was about to go to her uncle's to live with and care for him, she told him that her uncle had no beds. It was then that he gave her a large bed which he had, from which his daughter made two. After the death of the brother one of these beds was carried to the home of the administrator, while the other one at the time he testified was at the home of Andrew Cummings, his nephew, one of the petitioners in this case, and is still there waiting to be carried to the home of the administrator. Andrew Cummings, however, testified that the administrator, his uncle, had told him that the bed that was not returned was one that Ella had saved from the fire that destroyed her uncle's house several years before; but this was positively denied by the administrator.

The decedent died at the home of Andrew Cummings. A few days before his death he had drawn from the bank $100. Either the day before or the day after his burial, the testimony of the administrator and the nephews being at variance on this point, the trunk of the decedent, which was at the home of Andrew Cummings and which contained a small box, was examined by them and the box taken therefrom. Upon examination money was found in the decedent's bank book in this box. It was counted by Hugh Cummings, and, as stated by him and his brother, was found to be eighty dollars. The administrator is not positive whether he counted it or not but thinks he did. He asked what had become of the other twenty dollars that was drawn from bank a few days before. The nephews were not able to say, but thought it possible that he had spent it on a trip that he had taken a few days before his death to Dublin. As testified to by the administrator, the money was placed in the box, the box locked and the key was given to him and with the box he returned to his home. That when he opened it and with Mr. Jacobs, in the office of Mr. Williams, counted the money there

was but seventy dollars; this he deposited in bank. In this statement he is contradicted by his nephew Andrew Cummings, who stated that the money was not placed in the box, but was placed in the bank book which the administrator with the money put in his pocket. Mr. Jacobs recalled the occasion when the administrator came to the office and that he and the administrator deposited in bank the sum of $85.69, the deposit slip showing that $15.69 was from sales and $70 "from his pocket"; he did not recollect any more about it.

As stated, the decedent died at the home of Andrew Cummings. After his death Andrew and his brother Hugh claimed of the property of their uncle each a horse. Andrew in his testimony stated that when his uncle came there he said he wanted Andrew to have the mare and Hugh to have the horse. The record does not disclose what disposition was made of these horses, that is, whether they were returned as property of the estate or not.

The evidence discloses that these suits were brought in June, 1910, and that upon the call of the docket at the succeeding term of Court in September Mr. Williams failed to enter his appearance, nor had his appearance been entered at the time of the taking of this testimony in October following. His failure to enter his appearance is regarded by the appellees as an indication that he did not intend to defend these suits. Mr. Williams, however, in explanation thereof, testified that it was his intention to defend these suits, that his failure to enter his appearance upon the call of the docket was merely inadvertance on his part; that he had always said that the cases were to be tried by jury and they could not be tried before the November Term, and at which Court he had expected to try them, and his failure to enter his appearance would not prevent him from doing so.

In the case of *Cox, Executrix,* v. *Chalk,* 57 Md. 569, cited in appellees' brief, the executrix was charged with refusing to defend suits brought against her as executrix, "one suit by her brother, another suit by her sister, although she was noti-

fied that the demands made in said suits were unjust and not
properly chargeable against the estate; and that she had col-
luded with her brother and sister to defraud the petitioners
of their respective interests in the estate of the testator." The
case was heard by the Orphans' Court on the petition, answer
and evidence, but the record transmitted to this Court did
not contain the evidence on which the order of the Orphans'
Court, revoking her letters testamentary, was passed, nor did
it appear to have been reduced to writing, as was necessary,
and it was therefore held by this Court that the appeal would
not lie, as the evidence had not been reduced to writing and
transmitted to the appellate Court. This Court, however, in
that case deemed it proper to say "That the charges set forth
in the petition, if sustained by proof, are sufficient in our
opinion to justify the Orphans' Court in removing the appel-
lant from the office of executrix."

The allegations contained in the petition in that case are,
indeed, very similar to the allegations of the petition in this
case. In that case the evidence was not before this Court; in
this case it is, but in our opinion it does not support the
allegations of the petition.

The charge that the administrator refused to defend these
suits is not sustained by the evidence. The administrator
refused to pay the claims and insisted that before payment
the claimants should prove their respective claims before a
jury. The counsel, Mr. Williams, informed both Mr. Carver,
attorney for the claimants, and Mr. Webster, attorney for the
petitioner, that suit and judgment were necessary before these
claims would be paid, and told Mr. Carver, who had them for
collection, that his client, the administrator, intended to fight
these claims and that he, as his counsel felt it his duty to do
so. It is urged by the appellees that the failure of Mr. Wil-
liams to enter his appearance in these cases upon the call of
the docket, or at least before the time of the taking of the
testimony in the Orphans' Court, strongly indicated his inten-
tions to permit judgment to be recovered by default and that
no defence was to be made to the suits upon these claims.

The force and weight of this contention, however, is lost when the explanation of his failure to enter his appearance, accompanied by his declarations that he intended to resist the recovery of judgment, is made by Mr. Williams.

Nor do we think the charge of collusion between the administrator and the claimants for the fraudulent purposes alleged in the petition, is established by the evidence. It is true the administrator refused to plead the Statute of Limitations, but was he under the evidence in this case legally required to do so? And did his failure or refusal to plead the statute legally warrant the revocation of his letters of administration? Article 93, section 97 of the Code of 1904, provides that "It shall not be considered as the duty of an administrator to avail himself of the Statute of Limitations to bar what he *supposes to be a just claim,* but the same shall be left to his *honesty* and *discretion.*"

The administrator in his testimony stated that his daughter lived with and cared for her uncle for several years and that her uncle had told him that he owed her three hundred dollars for past services and that it was at that time in the bank, on interest at three per cent. This was at the time he wanted her to go again to live with him. The evidence directed against this claim is confined to the staleness of it, except what was said by Andrew Cummings in relation to a conversation between him and the claimant, Ella Dunnigan, wherein he testified that she said that her uncle had always paid her, that the amount so received was within two or three dollars a week of what she was making at the time of the conversation. Upon the information as to this claim then in the possession of the administrator, it was not unreasonable for him to suppose that this claim was a just one.

As to the claim of his nephew, James P. Dunnigan, he stated, when asked if he thought his brother's estate owed the bill, that he might have owed it, he would not say, and when asked if he thought it an honest bill, also said he was unable to say, but that there had been dealings between them and his brother had at times stopped at the home of his nephew, and he preferred the "Court to decide it." As to the claim

of Forwood, he said he did not know whether it was owing or not, or whether it was an honest bill, but, like the other two claims, he wished it determined in Court.

In the case of *Miller, Admr.*, v. *Dorsey*, 9 Md. 323, this Court said: "To his (the administrator) discretion and conscience alone is confined the propriety and justice of the interposition of the plea of limitations; with this the Orphans' Court has nothing to do." *Gordon* v. *Small*, 53 Md. 559; *Semmes, Excr.*, v. *Young's Admr.*, 10 Md. 247. Under the provisions of the Code above referred to, if the administrator, in the honest exercise of his judgment, supposes the claim to be just, it is then discretionary with him whether he shall plead the Statute of Limitations.

The evidence in this case does not disclose that the motives and conduct of the administrator in supposing these claims to be just and in refusing to plead the statute, were either fraudulent or dishonest. It was discretionary with him whether he should plead the statute.

Without referring in detail to the evidence offered to sustain the charge that the administrator had concealed certain of the goods, chattels and money of the estate, or that he had failed to return them as the property of the estate, we will simply say that as to the money, this mistake, if a mistake, could have been honestly made in the counting of the money. As to the other property, without mentioning it in detail and without passing upon the fact whether it should or should not have been returned into the estate, it is not shown that the administrator in omitting to return it as the property of the estate, was actuated by either fraudulent or dishonest motives. Section 243 of Article 93 of the Code provides a remedy in cases where the administrator conceals or omits to return property said to belong to the estate, and this could have been and can still be resorted to.

From what we have said, we think the Orphans' Court erred in passing the order. We will, therefore, reverse the order appealed from and remand the case for further proceedings.

*Decree reversed and cause remanded.*