TALBERT *v.* REEVES ET AL.

[No. 17, October Term, 1956.]

*Decided December 6, 1956.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON and HAMMOND, JJ., and HENDERSON, J., Chief Judge of the Fourth Judicial Circuit, specially assigned.

*Robert L. McClosky* for the appellant.

*Philip M. Fairbanks* for the appellees.

278

HENDERSON, J., delivered the opinion of the Court.

This appeal is from an order of the Orphans' Court for Montgomery County, entered on April 4, 1956, revoking letters of administration that had been granted to the appellant on July 19, 1955, removing her as administratrix and directing that she state an account within fifteen days. The ground of removal was that a conflict of interest was shown to exist between the appellant, in her capacity of administratrix, and in her capacity as a claimant against the estate.

Louis E. Talbert died intestate on July 1, 1955, leaving a widow, the appellant, and two sisters as his next of kin. The appellant qualified as administratrix and filed a bond. It was shown in her petition that the decedent left personal property to the value of about $30,000, and an interest in a business known as Talbert's Ice Service, the exact value of which was then unknown. Subsequently, an inventory was filed and an appraisal fixed the total value of the personal property at $41,249.41. Thereafter the ice business was sold at a price of $15,000, with the court's approval. There was also a petition to assign four taxicabs at their appraised value, as a part of the widow's statutory allowance, which was granted by the court. No objection was raised by the appellees, and it is not contended here that it was improper, although it is referred to in the appellees' brief as one of the reasons they sought removal.

On January 13, 1956, the widow filed a claim, verified by affidavit in the form required by Code (1951), Art. 93, sec. 102, reading as follows: "* * * I hereby certify that on this day of January, 1956, personally appeared before me Anna May Talbert, individually and as administratrix, and made oath in due form of law that it does not appear from any book or writing of her decedent that any part of the aforesaid claim has been discharged, and that to the best of her knowledge and belief, no part of the said claim has been discharged and no security or satisfaction given for the same. * * *".

On January 19, 1956, the two sisters, through counsel, filed an exception to the claim, alleging that a part of the claim for services was barred by limitations, and that the services were never rendered, or if rendered, not under any agreement, express or implied, to compensate the claimant. They demanded full proof of the claim. The claimant, through her attorney, filed a motion to strike the exception and demand for proof, alleging that the defense of limitations was not available to the exceptants, and that they were not entitled to call for full proof since that was a matter solely between the court and the administratrix. But before the matter came on for hearing the exceptants filed a petition to remove the administratrix, and after hearing upon the latter petition, the administratrix was removed. The sole question presented is whether the facts disclosed by the record, which are virtually undisputed, afford ground for the court's action.

It is clear that the Orphans' Court was entirely correct in appointing the surviving widow as administratrix in the first instance. Indeed, it was obligatory upon the court to do so in the absence of any showing of legal disqualification. Code (1951), Art. 93, sec. 22, provides that where there is no surviving child, the widow shall be preferred. The preference accorded to sisters under sec. 24, is only where there is no surviving husband, or widow, child, grandchild, father or mother. It is also clear that there is no statute in Maryland directing that when an administrator has a disputed claim against the estate, he is required to resign before action can be taken to enforce it, or providing that an administrator *pendente lite* be appointed to resist it. *Sullivan v. Doyle,* 193 Md. 421, 429. It was there pointed out that Code (1951), Art. 93, sec. 102, in effect authorizes the receiving of a claim, where the creditor is administrator, if the affidavit therein prescribed is made. Nor does the fact that a person is indebted to the estate disqualify him from acting as administrator. *Dorsey v. Dorsey,* 140 Md. 167.

It was also stated in the *Sullivan* case "that if any creditor, legatee or next of kin desires to resist the passage of such a claim, he may have issues sent to a court of law, or if the claim has been passed by the Orphans' Court and his rights

are impaired thereby, he may appeal to the Court of Appeals. *Bell v. Funk,* 75 Md. 368, 372, 23 A. 958; *Hayden v. Stevens,* 179 Md. 16, 16 A. 2d 922." See also *Stevenson, et al. v. Schriver and Wife,* 9 Gill & J. 324; *Bantz v. Bantz,* 52 Md. 686, 690; *Watson v. Watson,* 58 Md. 442; and *Burrell v. Veanie,* 203 Md. 407, 413. In the *Hayden* case it was recognized, however, that an administrator making claim against the estate is not acting at all in his representative character, and hence is not entitled to have a counsel fee charged against the estate. It was noted that in some states there are statutory requirements that the claim of an administrator be approved by a co-administrator appointed to conduct the defense, or that it be submitted to arbitrators. In other states, the administrator may be required to resign. See Note, 119 A. L. R. 306. In many states there is a statutory provision for the appointment of an administrator *ad litem* for the sole purpose of resisting the claim. See 2 *Woerner, American Law of Administration* (3rd Ed.), p. 1280. But all of the Maryland cases cited recognize that this is not true under the Maryland statutes and decisions. Of course, a person in his individual capacity cannot sue himself in his capacity of administrator, or *vice versa. Owings v. Bates,* 9 Gill 463, 466. Cf. *Sullivan v. Doyle, supra,* pp. 430, 431.

The appellees do not seriously contend that the mere filing of a claim by the administratrix is improper *per se,* or would justify her removal. Not only are the Maryland cases decisive on the point but it has been recognized that the right to administer is a valuable right. A holding that the mere filing of a claim would disqualify an administrator and require his removal would put an administrator to an election between foregoing his claim and his right to administer, which would work a hardship in some cases. Moreover, Code (1951), Art. 93, sec. 33, recognizes that a creditor may be entitled to letters of administration in the absence of blood relations, indicating that an adverse interest is not in itself deemed a disqualification.

The appellees contend, however, that removal can be justified because the administratrix, in her motion to strike the exception to the claim, has denied their right to full proof and

their right to plead limitations to a part of the claim. The mere assertion, through counsel, of a right to payment without full proof could hardly be considered an act of misfeasance, even though it is perfectly clear that the position is untenable. The cases cited recognize a right to full proof under circumstances like those in the instant case. See also *Stump v. Stump,* 91 Md. 699, 705.

On the point of limitations, Code (1951), Art. 93, sec. 105, provides that an administrator is not required to avail himself of a defense of limitations "to bar what he supposes to be a just claim, but the same shall be left to his honesty and discretion." This section is not strictly applicable because the administratrix and the claimant are the same person, and she is simply not in a position to resist her own claim on any ground. It has been held that since an administrator cannot sue himself, limitations do not run while he occupies the dual position. *Semmes v. Magruder,* 10 Md. 242. It has also been squarely held that where issues are sent to a court of law, limitations cannot be raised either by legatees or by a co-executor. *Yingling v. Hesson,* 16 Md. 112, 120. There the Court said: "The object appears to have been to present lapse of time as a legal bar to the demand, as effectually as if pleaded in an action at law. But the law is well settled that this cannot be done in the Orphans' Court, though it may look to the fact of such bar, as evidence to be weighed with all other testimony in relation to any claim, in determining on its justice. *Bowling v. Lamar,* 1 Gill, 360. As the jury is substituted in aid of the court to ascertain the facts, and the proceeding is to be considered all the while as within the probate powers of the Orphans' Court, (*State v. Reigart,* 1 Gill, 29. *Warford v. Colvin,* 14 Md. 532), the court of law, to which the issues may be sent, must decide on the same principles and rules that govern the Orphans' Court. Hence, whatever benefit the appellants could have from a reliance on lapse of time in the Orphans' Court, they may avail themselves of when the issues are tried at law, which involve the existence, legality and justice of the claim." Cf. *Long v. Long,* 118 Md. 198, 201. It was also held that the party propounding the claim should appear as plaintiff in the trial of the issues, and has

the burden of proof. Cf. *Stump v. Stump, supra.* One of the problems of proof facing the claimant would seem to be the Evidence Act, Code (1951), Art. 35, sec. 3.

It is suggested that an administrator making claim against an estate is placed in a more favorable position than a third party claimant, because in the latter case the administrator may, in the exercise of his sound discretion, refuse payment and force such claimant to bring an action at law within nine months, under Code (1951), Art. 93, secs. 114, 115. If an action is brought, the administrator may also, in the exercise of his sound discretion, plead limitations. Neither of these actions could be taken by an administrator against his own claim, since he could not be expected to find his own claim to be unjust, and he cannot sue himself, or plead in such an action. But this appears to be the logical and necessary consequence of the rule permitting an administrator to file a claim. Since he has a legal right to do so, the fact that he is then unable to raise a defense of limitations against his own claim furnishes no ground, we think, for his removal. It is well settled that an administrator cannot be removed except for legal and specific causes. *Fulford v. Fulford,* 153 Md. 81; *Schaumloeffel v. Schaumloeffel,* 186 Md. 280. There are instances where administrators have been removed for concealment, fraud or misfeasance in office. But here the administratrix is only asserting a claim she is legally entitled to make under the authorities cited. We think the Orphans' Court was not justified in ordering her removal under the circumstances. A like conclusion was reached by the United States Court of Appeals for the District of Columbia in *Perkins v. Berger,* 145 F. 2d 856, construing statutes borrowed largely from Maryland.

What we have said relates particularly to the claims for services rendered and moneys advanced during the lifetime of the decedent. We note, however, that there is another claim for services rendered "in connection with the ice and taxicab business—since the death of the deceased—* * *." None of the claims have yet been passed on by the Orphans' Court, but since the matter will be before the court on remand, either directly or with the aid of issues framed, we

think it appropriate to observe that the claim for services rendered since the death of the deceased, and principally during the period of administration, stands on a different footing. In effect, the claim is for an allowance by the court for services rendered the estate. It has been said that carrying on a business is beyond the function of an administrator's office. *Willinger v. German Bk. of Balto.*, 132 Md. 237, 241. On the other hand, reimbursement for the reasonable expense of preserving assets has been held proper under some circumstances. *Bantz v. Bantz, supra*, p. 696. Cf. Code (1951), Art. 93, sec. 5. Of course, the allowance of commissions is designed to compensate an administrator for all of the ordinary work of administering. The Orphans' Court should deal with this claim in the light of the authorities cited.

*Order reversed, with costs, and case remanded for further proceedings.*

HENDERSON, J., delivered the following dissenting opinion.

In this case the widow of an intestate qualified on July 19, 1955, as his administratrix. He also had left surviving him two sisters. The estate consisted of an ice service business appraised at $17,500, five taxicabs appraised at $2,300, "cash in the house," $1,381.50, and "cash in the bank", $18,267.91. There was a dispute between the widow and the sisters over the right to acquire the taxicabs; following that, and about six months after she had qualified as administratrix, the widow filed a claim for $21,760. (1) $15,360 was for "bookkeeping and general secretarial services" for 40 hours a month for 16 years prior to the death of decedent; (2) $3,900 was for "bookkeeping and general secretarial services in connection with the ice and taxicab business since the death of deceased" at $150 per week for 26 weeks; (3) $2,500 was "To monies advanced to deceased for payment of loans on ice business," but with no dates or amounts given.

The sisters filed exceptions demanding due proof, on the

grounds that a substantial portion of the claim was barred by the statute of limitations, and that the services were never rendered, or were not rendered under any agreement for compensation. Instead of recognizing this as a proper procedure when it is desired to test the validity of a claim (*Burrell v. Veanie*, 203 Md. 407, 414), counsel for the widow made a motion to strike out these exceptions on the grounds (1) "that the Statute of Limitations is not available to the exceptants" and (2) "that the objections made on behalf of the exceptants may not be urged on their behalf in this Court. That the decision to allow or disallow this claim is a matter to be decided solely by this Honorable Court and the Administratrix." Upon this the sisters asked that the widow be removed as administratrix, alleging she had shown she was not acting for the best interests of the estate, but was advancing her own individual interests. After hearing counsel the Orphans' Court revoked her letters, "it appearing that the situation is an untenable one for a fiduciary, as a conflict of interest exists between the duties of Anna May Talbert, as administratrix, and her rights as a claimant against the estate; * * *".

She appealed to this Court, which has held that "the Orphans' Court was not justified in ordering her removal under the circumstances."

The result of the Court's decision may bring about an unexpected situation. If the widow's claim is allowed by the Orphans' Court, then the sisters may ask that issues be granted, and the validity of her claim (less part (2) which has already been dismissed by this Court) will be passed upon by a jury. *Sullivan v. Doyle*, 193 Md. 421, 429. And in such an event the Statute of Limitations naturally will not be pleaded by the administratrix against herself.

But if the Orphans' Court disallows her claim, then the widow will be in the same position as any other creditor whose claim has been disallowed. Such person must seek his remedy in a Court of law, or in equity, and sue the estate. *Levering v. Levering*, 64 Md. 399, 413; *Houck v. Houck*, 112 Md. 122, 131. But Mrs. Talbert as alleged creditor cannot sue Mrs. Talbert, Administratrix, as the majority opinion points out. *Sullivan v. Doyle*, 193 Md. 421, 430.

She then will have to choose between giving up her claim as creditor or resigning in order to bring suit. "Swings the wheel full-circle," and the matter will be in the same situation as though this appeal had not been taken. It will be noted that the Common Law right of an administrator to retain estate assets to apply to his own claim against the estate (See 144 A. L. R. 944) does not apply in Maryland until such claim has been *passed* by the Orphans' Court. Code (1951), Art. 93, sec. 103.

Or this Court could have disposed of this matter by announcing it would follow the majority of the decisions in such cases which "hold that an executor or administrator cannot waive the statute (of limitations) as to his individual claims against the estate, even though he may do so as to the barred claim of a general creditor." 21 Am. Jur. 617.

This Court has already decided that a debtor who is also an administrator cannot rely on the Statute of Limitations. *Harlan v. Hunter,* 170 Md. 513, 517, discussed hereinafter.

The majority opinion points out that a widow is entitled to administer "in the absence of any showing of legal disqualification" under Code (1951), Art. 93, sec. 22; that an administrator may file his personal claim against the estate if the prescribed affidavit is made under Code (1951), Art. 93, sec. 102, without being required by law to resign; that the right to administer is a valuable one; that "the largest creditor" may qualify as an administrator in the absence of blood relations, Code (1951), Art. 93, sec. 33; that an administrator is not required to avail himself of the defense of limitations "to bar what he supposes to be a just claim, but the same shall be left to his honesty and discretion." Code (1951), Art. 93, sec. 105.

All of these statements of the law are in themselves individually correct. But still they do not meet the real issue, which is that of the serious conflict of interest. That this conflict exists is recognized in the paragraph referring to the duty of an administrator to use his honesty and discretion "in deciding whether he should plead limitations." The majority opinion states: "This section is not strictly applicable because the administratrix and the claimant are the same per-

son, and she is simply not in a position to resist her own claim on any ground." This seems equivalent to saying, "Because as administratrix she cannot resist her own personal claim there is no conflict of interests," whereas the opposite would seem to be true.

Is this a fair answer to the contention of the sisters that the law gives to *all* beneficiaries the right to have a fair and equitable administration of the estate; that all claims against the estate shall be passed upon with honesty and discretion; and that one who is "simply not in a position to resist her own claim on any ground" (as the majority opinion admits) should be required to make her choice: either she should continue as administratrix and waive her claim, or she should retire as administratrix and resort to the usual procedure of a creditor whose claim has been disallowed; and that is by a suit at law?

The majority opinion discusses only one side—that of the widow to continue as administratrix; it does not mention the right of the sisters:—not to have the widow's claim disallowed, but to have it rest on the same footing as one of them would be if she were making a similar claim, in which case her claim would be barred in part by limitations if the administratrix chose to plead the statute. It should be kept in mind the sisters are not demanding the right to be substituted for the widow in order to plead the statute against her claim; they are asking merely that the Orphans' Court appoint an impartial administrator with the right either to plead or not to plead the statute. This is so inherently fair a request that its refusal seems to require a clear justification, and it is submitted there is none in the majority opinion. The primary purpose of administration is to ensure a proper distribution to those entitled thereto, and not to make certain an administrator gets commissions. As the widow has apparently fully administered this estate, except for the determination of the validity of her own claim and the statement of a final account following such determination, the Orphans' Court could do her complete justice by allowing commissions to her for her services should she resign, or be removed.

The opinion disposes of the matter by saying there is no

statute in Maryland, as in some states, requiring an administrator to resign in order to press a disputed claim. That is true; and it is also true that there is no case in which the power of the Orphans' Court to remove an administrator *solely* because of conflicting interests has been passed upon by this Court. But the power has been recognized in a number of cases.

In *Owings v. Bates,* 9 Gill 463 (1851), a husband of a younger sister qualified as administrator in violation of a family agreement that the eldest sister was to administer. Later his letters were revoked, and he appealed. In approving this revocation this Court referred to the agreement, and the legal right of the older sister to administer. But it also made this statement:

> "It is true, that the appellant in his answer insists that the estate is indebted to him. But when the record discloses that his claim is for the board of the deceased from the year 1828 to the period of her death, and that his note for a large sum of money in her favor is but of recent date, (the 15th of November, 1848,) the case presents an aspect, in which the attitude both of debtor and creditor to the estate, renders it highly derogatory to sound principles of justice, that the adjustment should be committed to the party who stands in that relation to the other parties interested in the assets."

*Cox v. Chalk,* 57 Md. 569 (1882), was a case in which collusion was charged.

> "The petition was filed by the appellees, parties in interest, and charges that the appellant has neglected her duties as executrix, and has abused the trust reposed in her by law. It charges that she has refused to defend suits brought against her as executrix, one suit by her brother, and another suit by her sister, although she was notified by the petitioners that the demands made in said suits were unjust and were not properly chargeable against the estate; and

that she had colluded with her brother and sister to defraud the petitioners of their respective interests in the estate of the testator."

The Court pointed out that the evidence taken before the Orphans' Court had not been incorporated in the record, and that therefore the case was not properly before it on review. "We deem it proper, however, to say, that the charges set forth in the petition, if sustained by proof, are sufficient in our opinion to justify the Orphans' Court in removing the appellant from the office of executrix." It will be noted that a dereliction of duty in favoring unduly certain creditors was held sufficient to justify the removal of the executrix under the general powers of the Orphans' Court. And in the instant case the finding of the Orphans' Court that Mrs. Talbert can and will use her official position to favor herself is clearly justified.

In *Dunnigan v. Cummins*, 115 Md. 289, this Court cited *Cox v. Chalk*, 57 Md. 569, *supra*, as authority for holding that the wrongful refusal by the personal representative to defend suits would justify removal from office. However, it was held that the evidence was not sufficient to prove that the administrator was at fault, since it was his counsel who had failed to file pleas. The Court of Appeals also pointed out that it was not the duty of the administrator to plead limitations to bar what he considers to be a just claim, there being no evidence of collusion in this respect. At page 298 is this: "* * * if the administrator, in the honest exercise of his judgment, supposes the claim to be just, it is then discretionary with him whether he shall plead the Statute of Limitations." In the instant case one must be rather naive to assume the administratrix will be able to exercise an honest judgment in this regard.

In *Bates v. Revell*, 116 Md. 691, this Court stated that *if* the charge of using estate funds in his own personal ventures had been proved it would have justified removal. No section of Article 93 was referred to. Such power would seem to arise from the duty imposed on Orphans' Courts by Code (1951), sec. 254 of Art. 93 to "superintend the distribution of

estates of intestates, secure the rights of orphans and legatees," and from the rule that a fiduciary will not be permitted to use his position to his personal advantage.

In *Wingert v. Albert,* 127 Md. 80 (1915), two appraisers had been removed after a hearing. The finding of the Orphans' Court was this:

> "After having given careful consideration to the testimony and the able arguments of counsel in this matter, we can come to no other conclusion, though we do so with much regret and with no question of the integrity and good faith of Messrs. Corderman and Humrichouse, but that they are not persons of suitable qualifications, sufficiently *impartial* and *disinterested* to act as appraisers for the purpose of assessing the Collateral Inheritance Tax, of the real estate of P. Hager Wingert, deceased."

On appeal this Court said:

> "As to the appeal of the appraisers, it will be observed from the portion of the opinion of the Orphans' Court quoted above that the Court had no question of the integrity and good faith of the appraisers, but based its actions upon their finding upon the facts before them that the appraisers were not qualified, and 'sufficiently impartial and disinterested to act as appraisers, for the purpose for which they were appointed.' These were largely questions of fact to be found by the Court upon the evidence before it, and there can be no doubt that if these facts be true the Orphans' Court had the power to remove the appraisers. *Cox v. Chalk,* 57 Md. 569; *Magin v. Niner,* 110 Md. 299; *Wingert v. State,* 125 Md. 536.
>
> "There is a presumption in favor of the correctness of the finding of the Court upon these questions of facts, * * *".

It is true that case dealt only with the removal of appraisers and not administrators. But Code (1951), Art. 93, sec.

225, giving the right to remove appraisers, bases it only "on the death, refusal or neglect to act * * *"; therefore the removal because of lack of impartiality in *Wingert v. Albert* must have been under the general power conferred on Orphans' Courts by Code (1951), sec. 254 of Art. 93.

And in construing this section of the Code this Court said· in *Carey v. Reed,* 82 Md. 383, 396:

> "The Legislature, by the language of Code, Art. 93, sec. 230, which declares that: 'The Court shall have full power * * * to secure the rights of orphans and legatees, and administer justice in all matters relative to the affairs of deceased persons,' meant to enlarge its discretion and relieve it of a too narrow construction of its powers."

In *Haas v. Reimers,* 177 Md. 567, the Orphans' Court was held justified in removing an administrator who was guilty of failing to file reports and .inventories, and who had failed to file a plea of limitations in a suit brought by the administrator's sister which he testified he regarded as unjust. This is relevant to the instant case to this extent: That although an administrator has the right to refuse to file a plea of limitations if he regards. the claim as just, his refusal to file it against an unjust claim is a dereliction of duty. It should follow that one should not be permitted to administer who cannot, because of self-interest, exercise the impartial honesty and discretion which is called for under Sec. 105 of Art. 93. This Court also mentioned in the *Haas* case that the proven close intimacy between the administrator and the creditor was proper for consideration by the Orphans' Court when passing on the removal. And if a close relationship to the creditor is a factor in passing on removal it necessarily follows that when the two relationships are merged in the same person it is a factor of even more weight.

In *Hayden v. Stevens,* 179 Md. 16 (1940), it was pointed out that when an executor makes a claim to money or property standing in the name of the decedent he puts himself in two distinct positions. "However fair he may be, he is not acting

in his representative capacity when he presses a claim of his own to the debt or property."

In *Sullivan v. Doyle,* 193 Md. 421, this Court upheld the right of the Orphans' Court to remove an administratrix who was a debtor to the estate and who was alleged to have secured her appointment by fraudulent statements to the next of kin, causing the latter to renounce. The case may be considered as relevant here for two reasons: (1) The removal had been made under the general authority of the Orphans' Court, and not by virtue of any specific grant of power; (2) This Court discussed at length the contradictory relationship, and the legal incapacity of the administratrix to be sued by herself as an individual or to foreclose a mortgage against herself. While this Court did not say so in direct words, the reasoning and the language used in the opinion seems to recognize the right and power of the Orphans' Court to remove where the administrator is claiming against or is indebted to the estate.

In discussing the claim of the administrator as an alleged creditor Judge Delaplaine said:

> "Nevertheless, where an administrator, however honest he may be, files a claim of his own against the estate, he places himself in contradictory positions, one as the representative of the estate, the other as its adversary. And it is generally held that a person in his individual capacity cannot sue himself in his capacity as administrator. *Owings v. Bates,* 9 Gill 463, 466; *Shippee v. Shippee,* 122 N. J. Eq. 570, 195 A. 728."

The administrator was also indebted to the estate under a mortgage, which caused this comment:

> "In whatever different capacities a person may act, he can never maintain an action against himself. *Eastman v. Wright,* 6 Pick., Mass., 316, 321. We specifically hold that an executor or administrator cannot institute a suit at law or in equity against himself. *State, to Use of Stevenson v. Reigart,* 1

-Gill 1, 32, 39 Am. Dec. 628; *Semmes v. Magruder*, 10 Md. 242, 247. It would be highly improper for respondent to institute a foreclosure suit against herself. In a court of equity particularly, an administrator is considered to be a trustee for the creditors and next of kin of the deceased."

As was shown earlier in this opinion, a debtor to the estate, who is also administrator, is not permitted to interpose a defense of limitations to a claim made on behalf of the estate. *Harlan v. Hunter*, 170 Md. 513, 517; *Long v. Long*, 118 Md. 198, 201; *Juilliard v. Orem*, 70 Md. 465, 471. This seems to be a clear recognition of the principle that the law does not permit one who is a personal representative to use the Statute of Limitations to his personal advantage as such action conflicts with his duties as a fiduciary.

And this Court has required no specific statute to enable it to hold improper:

(1) The purchase by a trustee at his own sale. *Hoffman Coal Co. v. Cumberland Coal & Iron Co.*, 16 Md. 456.

(2) The purchase by a pledgee of the pledged articles (unless authorized by the pledgor). *Manning v. Shriver*, 79 Md. 41.

(3) The purchase by a Sheriff of property being sold by him at public sale under an execution. *Poe, Practice*, sec. 674; *Mark v. Lawrence*, 5 Harris & J. 64.

All of these are based on the well recognized principle that one who stands in a fiduciary position will not be permitted to use it for his personal advantage.

The majority opinion cites only one supporting case from other jurisdictions, that of *Perkins v. Berger*, 145 Fed. 2d 856 (C. A., D. C.). This decision is based on two grounds: (1) The statutory causes for removal of an executor "do not include either expressly or by inference the assertion of a stale *but just* claim against the estate". (Italics supplied as there seems to have been no evidence before the Court to determine whether the claim was in fact "just". Furthermore the defense of limitations can be pleaded to *all* claims.) And it is submitted that cases cited hereinbefore, but not noted in

the *Perkins* case, show the Maryland Court of Appeals has decided Orphans' Courts may remove under their general powers and in various situations not expressly covered by statute. (2) "An administrator is not bound to plead the statute of limitations against a claim which he asserts as a creditor and which he regards as just." That is a correct statement of the law, but does not answer the objection that one passing on the justness of his own claim cannot be expected to exercise that independent "honesty and discretion" which the Code assumes he will exercise. Nor does the opinion even discuss the right to remove because of a conflict of interests.

In a note in 119 A. L. R. is this general summarization of the law elsewhere:

> "It may be stated as being well settled that the fact that an administrator or executor claims a personal interest in the assets of his decedent's estate adverse to or conflicting with the claims of other persons interested in such estate may be ground for his removal or revocation of his letters."

And in support of this are cited numerous cases decided by the highest Courts of many States. Several of these are referred to in Appellee's brief.

In the instant case we have not only the conflict of interest caused by the assertion of this comparatively large claim—and $3,900 of which has already been disposed of by this Court—but there is also the important question of the right of all distributees to have an impartial person to decide whether the Statute should be pleaded against it.

A serious conflict of interests has been recognized in Maryland and elsewhere as justifying the removal of a personal representative; and it has been shown here that the administratrix is trying to use her fiduciary position to advance her own interests at the expense of the other heirs at law. In effect she has insisted upon sitting in judgment upon her own claim. Therefore I would hold that the Orphans' Court had not only the power but the duty to remove her. Since

294

 

the majority of the Court has held the Orphans' Court lacked the power to remove, I find it advisable to file this dissenting opinion.